**NATIONAL LABOR RELATIONS BOARD v. WILKENING MFG. CO.**

**No. 11023.**

United States Court of Appeals Third Circuit.

Argued June 16, 1953.

Decided Sept. 15, 1953.

Hastie, Circuit Judge, dissented.

Samuel M. Singer, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Milton Eisenberg, Washington, D. C., on the brief), for petitioner.

Joseph Brandschain, Philadelphia, Pa. (Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., Nathan Silberstein, Robert E. Wachs, Harvey S. Kronfeld, Philadelphia, Pa., on the brief), for respondent.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The National Labor Relations Board in its decision of September 23, 1952 found respondent guilty of an unfair labor practice in refusing to bargain with the union which had been declared by the Board to be the representative of the employees. The Board seeks enforcement of its order.

The dispute dates back to the election, held April 27, 1951, for the determination of a collective bargaining representative for the unit concerned. The vote as finally certified was 26 to 24 in favor of the union. Within four days thereafter the company filed objections to the conduct of the election. These involved the votes of three employees, Eleanor Lyons, Marion Humphreys and Janet Elder.

Miss Lyons had been told by both the union and the employer that she was ineligible to vote because she was discontinuing her employment at the close of business on the day of the election. Five minutes prior to the opening of the polls the Board agent in charge of the election ruled she had the right to vote. The polls were open only half an hour, from 4:00 P.M. to 4:30 P.M. Miss Lyons and her supervisor worked in a building separate from the main office and from the cafeteria where the voting took place. The Board accepted the employer's offer of proof that " * * * it had not been possible to contact her [Miss Lyons'] supervisor in order to pass the word to her * * *" before the polls closed, but because of the employer's earlier action (in conjunction with the union) respecting Miss Lyons it held that " * * * the Employer is manifestly in no position to assert Lyons' failure to vote as a ground for setting aside the election." This conclusion, plus the Board's designation of the employer's objection to Miss Lyons' failure to vote as a "post-election challenge", is the basis of the decision that there was no merit in the objection.

Marion Humphreys was respondent's telephone operator and worked at the switchboard in its main office. She was so engaged during the election until relieved by Miss Elder. The offer of proof regarding her actions was that when relieved, about 4:25 P.M., she proceeded immediately to the voting location, not more than 150 feet away. She thought she arrived prior to 4:30 but was told by the Board's agent in charge of the election that the polling place had closed.

The third employee with whose vote we are concerned is Janet Elder. Her name was not on the list of eligible voters. She had originally been grouped with Miss Lyons and for the same reason considered not entitled to cast a ballot. She was therefore challenged at the polls by the employer's representative under his general instructions to protest the ballot of any employee not on the agreed list. She, like Miss Lyons, was also ruled eligible by the Board's agent and did vote. Her vote was impounded by the agent because of the objection made to it. On May 1, 1951 the employer formally withdrew its objection to Miss Elder's voting.

Following the employer's prompt protest of the declared result of the election, the Regional Director conducted an investigation. He found no substance in the objections. He urged that they be overruled and the union certified. He stated that since, in the light of his other findings, the Elder ballot could not affect the election he made no recommendation regarding it. The employer filed exceptions and on July 11, 1951 the Board issued a Supplemental Decision (amended July 20, 1951) holding that the Elder vote could affect the election and directing that it be counted. The Regional Director's report of August 6, 1951 stated that the ballot had been lost or destroyed and recommended that the Board proceed to the other exceptions. On September 6, 1951 the Board overruled the objections as to the votes of Miss Lyons and Mrs. Humphreys and, finding that the union had secured a majority of the valid votes cast, certified it as the bargaining agent. On September 12, 1951 and again on October 8, 1951 the union asked the employer for a bargaining conference. Those requests were refused because the validity of the election had been questioned and because the employer knew that a decertification petition was about to be filed by its employees. That petition was filed on September 21, 1951. It requested that a new election be ordered. Another petition seeking a new election was filed Decem-

ber 3, 1951. Those petitions seem to have been treated as one and were denied by the Regional Director on December 10, 1951 on the ground that they had not been timely filed. An appeal to the Board urging that 80% of the employees desired decertification was dismissed as untimely on March 31, 1952. The Regional Director refused to take any action on a third petition filed April 4, 1952. His reason, according to his letter of August 25, 1952 was that the complaint in the present proceeding was pending at the time. The Board affirmed that ruling November 8, 1952.

Respondent, meanwhile, had filed a "Petition for Reconsideration", dated September 14, 1951, with the Board. In this instrument the Board was requested to grant a formal hearing on respondent's objections. This request was denied by the Board. Under Section 102.-61(b) of the National Labor Relations Board Rules and Regulations, Series 6 (effective March 1, 1951), controlling here, "If it appears to the Board that such exception raises substantial and material factual issues the Board may direct the Regional Director or other agents of the Board to issue and cause to be served upon the parties, a notice of hearing on said exceptions before a hearing officer." By the same section if it appears to the Board that the exceptions " * * * do not raise substantial and material issues with respect to the conduct or results of the election the Board may decide the matter forthwith upon the record or may make other disposition of the case."

The foundation of the Board's refusal to permit respondent to submit proof in support of its allegations as set forth by the Board in its decision of September 23, 1952 was that the Board had already either accepted that proof as true or resolved it " * * * on the basis of the substantially uncontradicted report of our Regional Director's investigation * * *." The Board in its brief goes even further in endeavoring to justify its position. It states that *"In review-*

*ing the Regional Director's report, the Board accepted as true substantially all of respondent's material factual allegations as to what took place. Hence, there were no factual issues to be determined, the only question being whether the company's assertions, taken as true, undermine the validity of the election. The Board, upon the basis of this record, concluded to the contrary."* (Emphasis supplied.)

In view of those statements the Board under Section 102.61(b) had the authority to reject the application for hearing. Cf. NLRB v. Huntsville Mfg. Co., 5 Cir., 1953, 203 F.2d 430. But in our judgment the record, acquiesced in by the Board, afforded no substantial support for the latter's decision that the election was proper and the union rightfully certified as bargaining agent. Both Miss Lyons and Mrs. Humphreys were deprived of their opportunity to vote under conditions within the control of the Board agent. The latter had the serious responsibility of seeing to it that the collective bargaining policies of the Act were carried out and in permitting this election to end as it did those policies were disregarded. Instead of no possible doubt existing but that the majority had prevailed it is firmly established that whether the union was in fact the majority preference depended entirely upon the Lyons, Humphreys and Elder votes.

The Board admittedly has a wide discretion in the conduct of an election under the Act but it must function " * * * in accord with the principles which Congress indicated should be used in securing the fair and free choice of collective bargaining representatives." National Labor Relations Board v. A. J. Tower Co., 329 U.S. 324, 332, 67 S.Ct. 324, 328, 91 L.Ed. 322. Whether it acted in this instance " * * * fairly and equitably in light of the realities involved" (Tower case, supra, 329 U.S. at page 333, 67 S.Ct. at page 329) is the fundamental issue before us. Under Section 7 of the National Labor Relations

Act as amended, 29 U.S.C.A. § 157,[1] the all important purpose of the instant election was to give the employees true representation in their collective bargaining with their employer. The decisions on the problems arising in connection with the election could have and may have changed the result, and the Board's experienced and expert judgment in resolving them is entitled to great weight. The task of supervising this particular election was not easy, especially when it is borne in mind that prompt disposition of the questions which developed was highly desirable. Nevertheless, we are unable to find any reasonable excuse for the acceptance of the extremely dubious, inequitable result. On the facts it cannot be held to comply with the mandate of the Act. As we said in NLRB v. National Biscuit Co., 3 Cir., 1950, 185 F.2d 123, 124.

> "The powers conferred upon this court by the National Labor Relations Act to enforce the orders of the Board are equitable in nature and may be invoked only if the relief sought is consistent with the principles of equity."

The final tally showed that the union had been selected by a majority of two. If Miss Lyons and Mrs. Humphreys had voted and had voted against the union the count would have been tied and the union could not have been certified. With both or either of them voting, Miss Elder's ballot could have been decisive.

There is no essential factual dispute in connection with Miss Lyons. The Board agent quite properly had corrected the error of the employer and the union in disqualifying her, but by closing the polls thirty-five minutes later, before the employer had been able to notify her and without any inquiry concerning her whatsoever, the agent completely nullified his own decision. When he closed the polls he of course did not know the vote figures, and, while there is nothing in the record from which we may conclude that he had reason to believe the election would be close, it seems perfectly clear that he could not arbitrarily assume that one vote would not have made a difference in the outcome. He did know that fifty-four votes had been cast and he did know that Miss Lyons had not voted. The employer by its joint agreement with the union to strike Miss Lyons' name from the qualified list had undoubtedly helped create the confusion regarding her eligibility, but there is not the slightest intimation in that action of bad faith on the employer's part. A typical pre-election mistake had been made and the agent had corrected it. A primary reason for his presence was to make sure that every eligible employee of the unit was permitted to vote. The error in originally disqualifying Miss Lyons was no sound ground for dismissing the objection. Nor is there merit in the argument that the employer had no interest in this election when it necessarily follows that if the election was invalid the charge of refusal to bargain with the union must fall.

One other point is urged by the Board with reference to the Lyons objection—that it is a post-election challenge and therefore of no merit. This is not supported by the facts. Miss Lyons' vote was not challenged. It could not have been for she made no attempt to vote. She never even knew she had been declared qualified until after the polls had been closed by the Board agent.

1. 29 U.S.C.A. § 157 reads as follows:
"Right of employees as to organization, collective bargaining, etc.
"Employees shall have the right to self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title." And see NLRB v. Kingston Cake Company, Inc., 3 Cir., 1953, 206 F. 2d 604.

Mrs. Humphreys, according to the offer of proof, could not leave the switchboard until relieved by her assistant, Miss Elder, who was delayed by the mix-up on her own vote. The employer's personnel manager and the union's business agent were present when Mrs. Humphreys came to the cafeteria. They stated that during the election they had been in the former's office and did not leave there for the polling place until after the 4:30 buzzer had sounded. Whatever the fact may be as to the exact moment Mrs. Humphreys came to the cafeteria, admittedly she was there prior to 4:35 and at a time when the actual count of the ballots had not commenced. The record fails to reveal if the agent understood why Mrs. Humphreys had not attended earlier, but certainly the information was readily obtainable. In the circumstances we do not think that the agent's refusal to allow Mrs. Humphreys to vote was in accord with Section 7 of the Act. We think he went beyond his reasonable discretion and in doing so unintentionally defeated the Act's plan to provide authentic employee representation. Actually, as this matter is presented to us by the Board in seeking enforcement of its order it does not require that we weigh the evidence for the purposes of determining whether in the circumstances the agent acted within his permissible discretion. As noted above, the Board has taken the position that there were no factual issues to be determined because it accepted as true substantially all of respondent's material factual allegations. The principal allegation as to Mrs. Humphreys was that she had been denied her right to vote despite the fact that she arrived at the polling place in time. In this posture of the case it seems obvious and requires no citation of authority that the agent abused his discretion.

The Board in its decision of July 1, 1951 expressly held that the Elder vote could affect the result of the election and directed that it be counted. It was not until the Regional Director's supplemental report of August 6, 1951 that it became aware of the unfortunate loss or destruction of the ballot. Confronted with that inescapable fact, instead of ordering a new election it went on to decide the Lyons and Humphreys issues. Eventually it overruled the objections in those matters and did nothing further with respect to the Elder ballot, presumably on the theory that it was no longer important. It is true that if the failure of the agent to allow sufficient time for the notification of Miss Lyons and his refusal to permit Mrs. Humphreys to vote were proper the Elder ballot would not be vital. NLRB v. A. J. Tower Company, 329 U.S. 324, 327, 67 S. Ct. 324, 91 L.Ed. 322. But in this instance where the agent's action may have affected the result of the election Miss Elder's vote could not be eliminated. The Board's own practice called for a new election in order that this vote could be counted. American Export Lines, 84 N.L.R.B. 134 (1949). And see NLRB v. Sidran, 5 Cir., 1950, 181 F.2d 671, 673.

A review of the record in this case persuades us that the petition for enforcement should be denied. In so concluding we reiterate the views we expressed in NLRB v. Globe Automatic Sprinkler Co., 3 Cir., 1952, 199 F.2d 64, 70:

"In our opinion, it would be inconsistent with the principles of equity if, under the circumstances stated, we should grant the Board's petition for enforcement.

"Further, to sustain the Board's position here would be violative of the spirit and the very letter of the National Labor Relations Act. The latter, in its declaration of policy, asserts that the purpose of the Act is to protect ' * * * the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.' 29 U.S.C.A. § 151 et seq."

The attempts to obtain decertification of the union by allegedly 80% of the

employees are urged by respondent as showing in themselves sufficient excuse for its refusal to bargain. Our decision that there was no valid election, hence no representative with whom the employer could bargain under the Act, obviates the necessity of passing upon this point.

Enforcement of the Board's order will be denied. A proposed decree to be submitted.

HASTIE, Circuit Judge, dissents.