**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROWN LUMBER CO., Respondent.**
**No. 15515.**

United States Court of Appeals
Sixth Circuit.
Sept. 30, 1964.

642

Duane R. Batista, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee A. Modjeska, Atty., N. L. R. B., Washington, D. C., on the brief.

Andrew Michaels, Akron, Ohio, for respondent, Roetzel, Hunsicker & Michaels, Akron, Ohio, on the brief.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

This case presents questions concerning the validity of an election conducted by the Board in the course of which the Board's agent voided a single ballot that affected the result. The labor union that won the election was certified by the Board as bargaining agent of Brown Lumber Company's employees. The Company refused to bargain with this Union on the ground that the ballot should not have been voided and the election was, therefore, invalid. Unfair labor charges were then filed that resulted in an order of the Board against the Company which is sought to be enforced here.

The election was by consent pursuant to the provisions of a written agreement. At the time the Board's agent voided the ballot in question, the Company President and the Company Observer orally protested his action in the presence of the Union Observer. These protests were disregarded. The votes were tallied, 11 votes were counted for the Union and 10 against. If the voided ballot had been counted against the Union, as the Company claims it should have been, the Union would not have received a majority of the votes cast and would have lost the election. In such event, the Union would not have been entitled to certification as bargaining agent of the Company's employees.

The Company filed a written protest with the Regional Director of the Board as follows:

"The Brown Lumber Company, through its representative, Harvey B. Rector, hereby protests the election held October 9, 1961 in above entitled matter and requests a hearing to determine the validity of a ballot questioned and sealed by Board Agent Alex DeMarco."

The Regional Director of the Board made no investigation as to the validity of the ballot, gave no consideration to the written protest and granted no hearing. The reason the Regional Director gave for this action was that the Company had not served on the Union a copy of the protest filed with him as required by the Board's rules.[1]

---

1. The pertinent rules are:
"Section 102.69 Election procedure; tally of ballots; objections; certification by regional director; report on challenged ballots; report on objections; exceptions; action of the Board; hearing. (a) * * * Within 5 days after the tally of ballots has been furnished,

At the hearing before the Trial Examiner on the unfair labor charges, the Company sought to prove that the voided ballot was in fact a valid ballot cast against the Union. The Trial Examiner ruled that such evidence was not admissible because the Company had not served a copy of its protest on the Union as required by the rules of the Board. The Company then made proffers of testimony of its President [2] and of the Company Observer.[3]

No testimony was offered by the general counsel for the Board as to the reason why the ballot was voided. No reason for voiding the ballot appears in the Tally of Ballots, in the Intermediate Report of the Trial Examiner or in the Decision and Order of the Board. The only place in the entire record where any light is thrown on the ballot is in the proffers contained in footnotes 2 and 3 herein. No findings of fact were made or conclusions of law adopted on the sub-

---

any party may file with the regional director four copies of objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor. Such filing must be timely whether or not the challenged ballots are sufficient in number to affect the results of the election. Copies of such objections shall immediately be served upon each of the other parties by the party filing them, and proof of service shall be made.

"(b) If no objections are filed within the time set forth above, if the challenged ballots are insufficient in number to affect the result of the election, and if no runoff election is to be held pursuant to section 102.70, the regional director shall forthwith issue to the parties a certification of the results of the election, including certification of representatives where appropriate, with the same force and effect as if issued by the Board, and the proceeding will thereupon be closed.

"(c) If objections are filed to the conduct of the election or conduct affecting the result of the election, or if the challenged ballots are sufficient in number to affect the result of the election, the regional director shall investigate such objections or challenges, or both. * * *

"(g) In any such case in which the regional director or the Board, upon a ruling on challenged ballots, has directed that such ballots be opened and counted and a revised talley of ballots issued, and no objection to such revised tally is filed by any party within three (3) days after the revised tally of ballots has been furnished, the regional director shall forthwith issue to the parties certification of the results of the election, including certification of representatives where appropriate, with the same force and effect as if issued by the Board. The proceedings shall thereupon be closed."

2. "Mr. Rector: The Respondent proffers an offer of proof that this witness, if allowed to testify, will say that he examined the void ballot presented to him by the Board agent fairly; that he went up the line; and that he himself determined there was no erasures; that apparently to him it looked like probably the last voter had broken the pencil point and made an indenture mostly without the point, without lead. It was clearly marked in the 'no' box. He so informed the Board agent of that and then the Company Observer, Mrs. Villard, also examined the void ballot, and that so far as the Company was concerned, there was no markings on the other side of the ballot and the mark was distinguishable in the 'no' box on the ballot; and that he then called Harvey B. Rector on the telephone and advised Rector of what he had found, and that Rector advised him to protest to all parties present the voiding of this ballot.

"That will be the extent of my offer of proof as far as this witness is concerned, so I hereby offer that as proof.

"Trial Examiner: I'll reject the offer of proof. (Board's Appendix p. 31a)"

3. "Mr. Rector: The Respondent will make an offer of proof as to what this witness would testify if she were called to testify by the Trial Examiner.

"This witness would testify that she, as an observer for the Company, observed this ballot which had been laid out by the Board agent; that she looked at it; it was marked in the 'no' box of the ballot; and that it was discernible and that to her it looked like no erasures had been made, but it did look like the pencil point had broken and that the remainder of the X or marking in that box was by imprint. I hereby proffer that as proof.

"Trial Examiner: I will reject the proffer. (Board's Appendix p. 33a)"

ject of the validity of the ballot. The Board, in order to support its decision, relied entirely on the failure of the Company to serve a copy of the protest on the Union.

In this posture of the case, we must accept the proffers of testimony as true. If the proffered testimony had been admitted in evidence, it tended to prove (1) that the ballot was properly marked against the Union and should not have been voided and (2) that the action of the Regional Director in failing to investigate the protest and denying a hearing was arbitrary and unreasonable.

The Board found as a fact that the respondent "timely filed a letter with the Regional Director objecting to the election and requesting a hearing on the validity of the voided ballot." It made no finding that the Union lacked knowledge of the filing of the written protest or that the Union was prejudiced by the fact that it did not receive a copy of the protest. As before stated, the Union knew of the oral protests because they were made in the presence of its Observer.

The Board stated that it was "not unmindful that a literal interpretation of the Board's Rules and Regulations may lead to a seemingly harsh result in the facts of a particular case," but held that its rules must "be strictly observed."

In adopting and enforcing its rules, the Board was required to give effect to the principle of majority rule as required by the Act. 29 U.S.C. § 159(a). As well stated by the Supreme Court in N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 331, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946).

"As we have noted before, Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees. * * * Section 9(c) of the Act authorizes the Board to 'Take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.' In carrying out this task, of course, the Board must act so as to give effect to the principle of majority rule set forth in § 9(a), a rule that 'is sanctioned by our governmental practices, by business procedure, and by the whole philosophy of democratic institutions'. S.Rep. No. 573, 74th Cong., 1st Sess., p. 13. It is within this democratic framework that the Board must adopt policies and promulgate rules and regulations in order that employees' votes may be recorded accurately, efficiently and speedily."

See also N. L. R. B. v. Wilkening Mfg. Co., 207 F.2d 98 (CA 3, 1953).

Nothing in the present case indicates that the strict enforcement of the Board's rule relating to service of a copy of the protest was necessary for the protection of the election machinery from danger of abuse and fraud. Nor is there a showing that service of a copy of the protest was necessary to protect the will of the majority of the voters. If the proffer correctly states the facts, a slavish adherence to the Board's rules in this case would result in a greater injustice than the injustices that the rules are to prevent. To determine the objectives of the Board's rules, the court's interpretation of the National Labor Relations Act and the Board's rules should be considered.

■ The National Labor Relations Act is remedial rather than punitive and contemplates protection of public rights which it creates and defines. Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940); Consumers Power Co. v. N. L. R. B., 113 F.2d 38 (CA 6, 1940).

The rules and regulations of the Board expressly provide that they "shall be liberally construed to effectuate the purposes and provisions of the act," Rule 102.121. In accordance with this state-

ment the courts have said that the Board is not a slave to its rules. Foreman & Clark, Inc. v. N. L. R. B., 215 F.2d 396 (CA 9, 1954).

We do not believe it was ever intended that the Board rules should operate as the law of the Medes and Persians which "altereth not." They should not be applied as "a rigid code to have an inflexible meaning irrespective of circumstances," which was the language used by the Supreme Court in refusing to adopt a strict and harsh construction of the Federal Rules of Criminal Procedure. Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 decided June 22, 1964. In our judgment, the Board's rules should have no greater sanctity than the rules governing courts.

If liberality of construction is to be given to promote fairness, the purpose was defeated by requiring a strict compliance with the rules and a failure to investigate. The primary purpose in examining a questioned ballot has been clearly stated to be to determine the intention of the voter. N. L. R. B. v. Whitinsville Spinning Ring Co., 199 F.2d 585 (CA 1, 1952). In this opinion, the court cites a number of Board decisions giving effect to this principle which the Board could have applied had it examined the questioned ballot. Thus failure to determine the intention of the voter by strictly adhering to the Board's rules did not insure or promote the fair and free choice of bargaining representatives guaranteed by the Act and clearly enunciated by the Supreme Court in A. J. Tower, supra. See also Celanese Corp. of America v. N. L. R. B., 291 F.2d 224 (CA 7, 1961).

The failure of the employer to file objections to an election within five days, as required by the Board's rules, did not prevent the Court of Appeals from upsetting an unfairly conducted election in N. L. R. B. v. Fresh'nd-Aire Co., 226 F.2d 737 (CA 7, 1955). In that case, as in the case at bar, the conduct complained of was that of the Board's own agent.

Rule 102.69(c) of the Board required an investigation to be made by the Regional Director, "[i]f objections are filed to the conduct of the election or conduct affecting the result of the election." (See fn. 1.) Although the Board found that objections were timely filed, it was undisputed that the Regional Director made no investigation of the objections and hence he did not comply with the rule.

Furthermore, the ballot in question was sufficient to affect the result of the election. This is another reason why the Regional Director should have complied with the rule by making an investigation.

This Court is given power by the Act to " * * * make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board" 29 U.S.C. § 160(f). The limitation on the power of the Court is that "the findings of the Board with respect to questions of fact if supported by substantial evidence * * * shall * * * be conclusive." id.

The Administrative Procedure Act grants to the reviewing court power to "(B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 1009.

In N. L. R. B. v. National Biscuit Co.,[1] 185 F.2d 123, 124 (CA 3, 1950) the court said:

"The powers conferred upon this court by the National Labor Relations Act to enforce the orders of the Board are equitable in nature and may be invoked only if the relief sought is consistent with the principles of equity."

The court repeated this rule of law in N. L. R. B. v. Wilkening Mfg. Co., 207 F.2d 98 (CA 3, 1953) where an election was invalidated because of the manner in which it was conducted.

In our opinion, the Regional Director had jurisdiction to hear and determine the protest and to decide the question whether the voided ballot was properly marked. He should have done so.

The Board's order is set aside and the petition for enforcement is denied.

EDWARDS, Circuit Judge (dissenting).

Subsequent to the tally of ballots in a representation election, the rules of the National Labor Relations Board provide that either party may file protests within five days. The rules of the National Labor Relations Board also provide for service of copies of that protest "immediately" upon the opposite party.[1]

It is clear from the record in this case that no attempt was ever made by respondent to comply with this latter requirement. As a result, the hearing on respondent's protest was never held.

It is hard to contemplate proceeding to a hearing under any concept of due process where the opposite party has not been served in advance with information concerning the complaint to be heard. Certainly this has been a long-standing National Labor Relations Board requirement which has been administered with an even hand. General Time Corp., 112 N.L.R.B. 86 (1955); Phillips Petroleum Co., 122 N.L.R.B. 1351 (1959).

If we dealt herein with irregular or somewhat delayed service of objections, where nonetheless the opposite party's right to know what to meet at the hearing had been satisfied, rigid compliance with such an administrative rule might have all the objectionable features which the opinion of the court sets forth.

Here it is clear that no service was ever attempted or had. Therefore, the effect of this decision appears to me to invalidate a perfectly reasonable rule of procedure which the National Labor Re-

lations Board is specifically authorized to adopt. National Labor Relations Board v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946).

I dissent.

---

1. "* * * [c]opies of such objections shall immediately be served upon each of the other parties by the party filing them, and proof of service shall be made." N.L.R.B. Rules and Regulations and Statements of Procedure, Series 8, Section 102.69(a).