**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUN DRUG CO., Inc., Respondent.**

**No. 15291.**

United States Court of Appeals
Third Circuit.

Argued Nov. 4, 1965.

Decided April 19, 1966.

Marcus Sisk, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N.L.R.B., on the brief), for petitioner.

John G. Wayman, Pittsburgh, Pa. (J. Sherman McLaughlin, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for respondent.

Before STALEY and FREEDMAN, Circuit Judges, and COHEN, District Judge.

FREEDMAN, Circuit Judge.

The National Labor Relations Board seeks enforcement under Section 10(e) of the National Labor Relations Act (29 U.S.C. § 160(e)) of its order directing respondent to bargain with the Retail Clerks International Association, Local 298, which the Board had certified as the collective bargaining representative at the respondent's drug store in New Castle, Pennsylvania.[1] The order is based upon the Board's finding that respondent violated § 8(a) (1) and (5) of the Act (29 U.S.C. § 158(a) (1), (5)) by its refusal to bargain collectively with Local 298.

Respondent admits its refusal to bargain, but seeks to justify it by attacking the certification of the Union on the grounds that its New Castle store was not properly designated as the appropriate bargaining unit and that even if it was, the majority vote for the Union in the election resulted from the invalidation of a decisive ballot without an adequate trial.

The Act makes no provision for direct judicial review of Board decisions in representation proceedings. Such orders are interlocutory. Review is indirectly available to a dissatisfied employer by refusing to bargain with the certified collective bargaining agent and thereby incurring an unfair labor practice charge. Available defenses may then be asserted in resisting the Board's petition for enforcement of its order to cease and desist from the refusal to bargain.[2] Respondent has fully preserved its objections and they are now properly before us.

## 1. THE UNIT DETERMINATION

Respondent operates a chain of fifty-three drug stores, one in Parkersburg, West Virginia and fifty-two, including the one in New Castle, in Western Pennsylvania. Its main office and administrative headquarters are in Pittsburgh.

On June 7, 1963, the Union petitioned the Board to hold an election in a bargaining unit consisting of the nonsupervisory employees of respondent's New Castle store. At a hearing held on behalf

1. 147 N.L.R.B. 669 (1964).

2. See, e. g., N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 439, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

of the regional director, respondent sought to show that because of the integrated nature of its operation the New Castle store was not an appropriate unit for bargaining. It claimed that all its stores should constitute one unit, or in the alternative, that they should be divided into two units following the line of its subdivision of its administrative supervision into two areas. The Union claimed that because the New Castle store operated in an autonomous manner and its employees were more closely identified with it than with the chain, the store constituted the appropriate bargaining unit. The regional director found that respondent's central office in Pittsburgh services administratively all of its stores, handles various record keeping functions relating to personnel, payroll, sales and inventory, and establishes personnel policies, wages, conditions of employment and product prices. The individual store managers, however, including the New Castle store manager are in charge of the day-to-day operations of their respective units with authority to hire, fire and discipline store personnel. They make work assignments, departmental transfers within the store, grant overtime, leaves of absence up to a week and deal with personnel problems of the store's employees. An employee who wishes to transfer from one store to another must make his request through his store manager. The store manager supplies the central office with personnel information, keeps records of sales, makes recommendations as to advertising, requisitions merchandise and purchases some pharmaceutical items and perishable food supplies.

The New Castle store is situated fifty miles from respondent's central office and is its only store in that city. The stores of respondent nearest to New Castle are in Beaver Falls, Pennsylvania, fifteen miles away, where there are two stores, at Sharon, Pennsylvania, approximately twenty miles away, and in Butler, Pennsylvania, thirty-five miles distant. There had been no employee interchange involving the New Castle store because respondent's policy is not to make a transfer between stores over ten miles apart.

On these facts the regional director found that the New Castle store was the unit appropriate for bargaining,[3] and accordingly directed an election.

Respondent thereupon filed with the Board a petition for review of the regional director's decision challenging his factual findings and claiming that his legal conclusion violated § 9(c) (5) of the National Labor Relations Act, (29 U.S.C. § 159(c) (5)), which provides: "In determining whether a unit is appropriate * * * the extent to which the employees have organized shall not be controlling." The Board denied the petition, stating that it raised no substantial issues warranting review and that there was no compelling reason for reconsideration of Board policy and thereby adopted the opinion of the regional director as its own. The election and certification followed.

The Act confides to the Board the determination of the appropriate unit for bargaining purposes. Section 9(b) (29 U.S.C. § 159(b)) provides: "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by [the Act],[4] the unit appropriate for the purposes of collective bargaining shall be

---

3. The regional director said: "Under the circumstances herein and considering the record as a whole, noting particularly the geographical separation of the New Castle store, the lack of employee interchange, the substantial degree of autonomy in day-to-day operations exercised by the store manager, the absence of a bargaining history involving employees of the New Castle store, and the fact that no labor organization is seeking to represent employees on a broader basis, I find that

a unit of the employees at the New Castle store is appropriate. Sav-On Drugs, Inc., 138 N.L.R.B. 1032 (1962)."

4. Section 7 of the Act provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right

the employer unit, craft unit, plant unit, or subdivision thereof * * *."

■■ In performing its function the Board has a wide discretion,[5] one which the Taft-Hartley Act did not withdraw when it added the proviso of § 9(c) (5), which the Board of course is bound to obey.[6] The determination of the appropriate unit is a difficult and complex decision and may seriously affect not only the employer and the employees, but rival unions, as Judge Madden, a former member of the Board, has recently written in recalling the bitter rivalry between the craft and industrial unions in the early days of the Board's existence.[7] Not lightly therefore may we interfere with the Board's exercise of its broad discretion.

Respondent does not attack the sufficiency of the facts to support the Board's conclusion. It argues that the Board's opinion is inadequate in the light of N. L. R. B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 85 S.Ct. 1061 (1965), which requires that the Board's opinion affirmatively show that its decision was not controlled by the extent of organization.

■ We agree that under *Metropolitan* the Board may not evade the command of § 9(c) (5) by purporting to base its decision on other factors when in truth it has been controlled by the extent of employee organization. The Board's opinion in Metropolitan was held inadequate because it was shown that it was contemporaneously designating units consisting variously of one, two or even more offices of the employer, without attempting to distinguish its apparently contradictory decisions. A justifiable inference therefore arose, in the absence of other distinguishing circumstances, that the extent of organization may have controlled the decision, and this required more elaborate, "articulated reasons for the decisions in and distinctions among [them]", N. L. R. B. v. Metropolitan Life Insurance Co., 380 U.S. at 442, 85 S.Ct. at 1064, than would otherwise have been necessary, to "give clear indication that [the Board] has exercised the discretion with which Congress has empowered it." Id., at 443, 85 S.Ct. at 1064; S. D. Warren Co. v. N. L. R. B., 353 F.2d 494, 499 (1st Cir. 1965). There is nothing in the present case, however, to suggest that the Board's decision was based on the extent of organization or any other hidden factor. The Board has made no inconsistent determinations regarding respondent's stores, as occurred in Metropolitan and in N. L. R. B. v. Capital Bakers, Inc., 351 F.2d 45 (3d Cir. 1965), and it has consistently designated single stores of other retail chains as appropriate units in situations strikingly similar to those in the present case.[8]

to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

5. Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N.L.R.B. v. Hearst Publications, 322 U.S. 111, 132–135, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 492–493, 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

6. N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 441, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); see Metropolitan Life Insurance Co. v. N.L.R.B., 328 F.2d 820, 822 (3d Cir. 1964), vacated

on other grounds, 380 U.S. 523, 85 S.Ct. 1325, 14 L.Ed.2d 265 (1965).

The House Committee which proposed § 9(c) (5) expressly recognized that "The Act still leaves the * * * Board wide discretion in setting up bargaining units." H.R.Rep. No. 245, 80th Cong., 1st Sess., 37–38 (1947).

7. S. D. Warren Co. v. N.L.R.B., 353 F.2d 494, 498 (1st Cir. 1965).

8. Sav-On Drugs, Inc., 138 N.L.R.B. 1032 (1962); Winn Dixie Stores, Inc., 143 N.L.R.B. 848, 860–61 (1963), order enforced, 341 F.2d 750 (6 Cir. 1965), cert. denied, 382 U.S. 830 (1965); Merner Lumber and Hardware Co., 145 N.L.R.B. 1024, 1025–26 (1964), order enforced, 345 F.2d 770 (9th Cir. 1965), cert. denied, 382 U.S. 942 (1965); Primrose Super Market of Salem, Inc., 148 N.L.R.B. 610,

Moreover, here the criteria on which the Board relied are obviously permissible and, as applied to the facts of this case in the regional director's report, fully support the designation of the New Castle store as the appropriate unit. The report demonstrates clearly that it is composed of employees closely and distinctly related in location and function, and is inherently apt for bargaining purposes. See, e. g., *Capital Bakers,* supra; Note, The Board and Section 9(c) (5): Multi-Location and Single-Location Bargaining Units in the Insurance and Retail Industries, 79 Harv.L.Rev. 811, 833–37 (1966).

■■ There is therefore presented no basis for doubt of the genuineness of the Board's decision or for suspicion that it resulted from giving an unacknowledged controlling effect to the extent to which the employees had organized. Unless there is presented a prima facie case of misconduct, it would be disrespectful of "the integrity of the administrative process" "to probe the mental processes" of the Board, and we will accept its opinion as the true expression of the basis of its decision. Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938), 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Singer Sewing Machine Co. v. N. L. R. B., 329 F.2d 200, 207–208 (4th Cir. 1964). Compare United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681 (1954), 349 U.S. 280, 75 S.Ct. 746, 99 L.Ed. 1074 (1955). We therefore conclude that the Board's opinion adequately confirms that it did not abuse the broad discretion which it was required to exercise in arriving at its decision.

2. THE CHALLENGED BALLOT

At the election held on August 13, 1963, twelve ballots were cast. Six votes were for the Union and five against it; the twelfth ballot, that of Carol Stilley, was challenged by the Union on the ground that she was not an employee during the

613–17 (1964), order enforced by First Circuit, unreported, cert. denied, 382 U.S. 830, 86 S.Ct. 68, 15 L.Ed.2d 74 (1965);

eligibility period, which was the payroll period of June 24 to July 6, 1963.

Since the challenged ballot might affect the result of the election the regional director proceeded under the Board's Rules and Regulations to conduct an administrative investigation into its validity. As a result of his investigation the regional director issued a Supplemental Decision and Certification of Representative in which he found that Mrs. Stilley was an occasional or casual employee rather than a regular part-time employee during the eligibility period and therefore was not eligible to vote. Respondent filed a request for review of the decision, which the Board denied on the ground that it raised no substantial issues warranting review.

Respondent assails the exclusion of Mrs. Stilley's ballot on the ground that the regional director originally and the Board on subsequent review and later in the unfair practice hearing, refused to afford it a formal opportunity to present testimony and examine witnesses regarding her status as an employee.

■ The National Labor Relations Act confers on the Board a broad mandate to administer elections. N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1940). Section 9(c) provides: "If the Board finds on the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." Pursuant to its authority to make regulations to carry out its purposes (§ 6, (29 U.S.C. § 156)), the Board has established a procedure regarding challenged ballots. Its Rules and Regulations provide: "§ 102.69(a) Unless otherwise directed by the Board, all elections shall be conducted under the supervision of the regional director in whose region the proceeding is pending. * * * Any party and Board agents may challenge, for good cause, the eligibility of any person to participate in the elec-

The H. L. Hudson Co., 155 N.L.R.B. No. 133 (1965); compare Clermont's, Inc., 154 N.L.R.B. No. 111 (1965).

414

tion. The ballots of such challenged persons shall be impounded. * * *

"(c) If * * * the challenged ballots are sufficient in number to affect the results of the election, the regional director shall investigate such * * * challenges * * *. If the election has been conducted pursuant to a direction of election * * * the regional director may (1) issue a report on * * * challenged ballots * * *, or (2) exercise his authority to decide the case and issue a decision disposing of the issues and directing appropriate action or certifying the results of the election. In either instance, such action by the regional director may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, on the basis of a hearing before a hearing officer, designated by the regional director."

The Rules and Regulations also provide for the filing with the Board of requests for review. (§ 102.69(c)). Where a request for review is granted, the Board will consider the entire relevant record. (§ 102.67(g)).

■■■ Judicial decisions have clearly established that the courts will review Board orders based on the disposition of challenges to crucial ballots without an evidentiary hearing to insure that they are consistent with these rules. The parties are entitled to such a hearing if substantial and material factual issues are raised, and if the Board has clearly erred in denying a hearing its order will not be enforced.[9] It is equally clear, however, that such a hearing will not be required if no such issues existed, either because the regional director and the Board have assumed the truth of the factual offer of the objecting party,[10] or because they have reasonably concluded that the facts alleged would not constitute legal justification for setting the election aside.[11] Where an evidentiary hearing is unnecessary, the Board's decision is still subject to review for clear legal error on the merits.[12]

■■■ A recognition of practical necessity underlies these rules. Time is a critical element in election cases. This factor explains the refusal of Congress to provide for judicial review of representation disputes until they result in an unfair labor practice order. See Boire v. Greyhound Corporation, 376 U.S. 473, 476–477, 479, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); N. L. R. B. v. Air Control Products, 335 F.2d 245, 251–252 (5th Cir. 1964); H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess., 56–57 (1947), U.S.Code Congressional Service 1947, p. 1135. It is no doubt largely for the same reason that the statute does not require a hearing [13] and that the Board's Rules and Regulations authorize an administrative investigation unless "substantial and material factual issues exist which can be resolved only after a hearing." Where there are no such issues, the decision of challenged ballots on the basis of an administrative investigation is "not only proper but necessary to prevent dilatory tactics by employers or unions disappointed in the election returns * * *." N. L. R. B. v. Joclin Mfg. Co., 314 F.2d 627, 632 (2d Cir. 1963).

■■■ It is unnecessary to consider whether an employer would be deprived of property without due process of law if the Board's regulations did not provide an opportunity for a hearing on substan-

---

9. N.L.R.B. v. Joclin Mfg. Co., 314 F.2d 627, 631–632 (2d Cir. 1963); N.L.R.B. v. Air Control Products, 335 F.2d 245, 249 (5th Cir. 1964).

10. N.L.R.B. v. Air Control Products, supra, 335 F.2d at 249; N.L.R.B. v. Wilkening Mfg. Co., 207 F.2d 98, 100 (3d Cir. 1953).

11. N.L.R.B. v. Air Control Products, supra, 335 F.2d at 249–250.

12. N.L.R.B. v. Joclin Mfg. Co., supra, 314 F.2d at 634–635; N.L.R.B. v. Wilkening Mfg. Co., supra, 207 F.2d at 102.

13. Such hearings as are held are exempted by § 5(6) of the Administrative Procedure Act (5 U.S.C. § 1004(6)) from the requirements of that section. Moreover, hearings may be held by members of the staff of the regional office who are not adjudicatory officials.

tial and material factual issues. The Regulations make that question academic. Compare Brotherhood of Railway and Steamship Clerks etc. v. Employers Ass'n, 380 U.S. 650, 666–668, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). In any event, respondent here sought an evidentiary hearing to determine whether there was a substantial and material question of fact. This is a question of law and due process does not require an evidentiary hearing as a prerequisite to a valid determination of a question of law. See F. C. C. v. W J R, 337 U.S. 265, 279, 282–284, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); N. L. R. B. v. Clausen, 188 F.2d 439, 444 (3d Cir. 1951), cert. denied, 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 653 (1951). Otherwise, summary judgment in a civil action would violate due process. See Fed.R.Civ.P. 78. The dictum in *Capital Bakers,* supra, 351 F.2d at 51–52 is not to the contrary, and deals only with cases where a substantial factual issue exists. We do not accept as accurate guides the indications in N. L. R. B. v. Sidran, 181 F.2d 671 (5th Cir. 1950) and N. L. R. B. v. Poinsett Lumber & Mfg. Co., 221 F.2d 121 (4th Cir. 1955) that a hearing is required even where there has not been shown a substantial and material disputed issue of fact.

Here the regional director based his decision on the following undisputed facts: Mrs. Stilley had been a full time employee at one of respondent's stores in Pittsburgh until May 16, 1963. Shortly before the termination of her employment there, she asked for a transfer to a store closer to her new home in Mahoningtown, Pennsylvania, and was told that there was no opening available at that time but that she would be transferred at the first opportunity. Thereafter on June 24, 25, 26 and 27, 1963, (days which were within the period of eligibility for the election,) she worked at the New Castle store for a total of twenty-three and one-half hours as a substitute for an employee who was given time off, and on July 6, 1963 she worked at the New Castle store for six and one-half hours as a substitute for another employee who was absent because of illness. She requested not to be as-signed any work during the next two-week period, and in any event, there was no work available. On July 27 a regular full-time employee at the New Castle store quit and Mrs. Stilley replaced her. Mrs. Stilley worked during the eligibility period only because of the fortuitous circumstances of the unexpected absence of two employees and the assignment of another regular employee who worked part time.

On these facts the regional director decided that Mrs. Stilley's employment had terminated on May 16, 1963 and found that her work at the New Castle store during the eligibility period was "limited, irregular and sporadic". He therefore concluded that she "was an occasional or casual employee, rather than a regular part-time employee, on the eligibility date."

In its request for review of the certification, respondent offered to prove as additional facts that Mrs. Stilley's name had never been removed from the company's payroll, that under the company's practice her transfer was accomplished when she began doing work at the New Castle store, that her employment with the company had not terminated since she started work in the Pittsburgh store on September 13, 1962, that she was certain to be recalled and that she was not a casual or occasional employee. The Board, in rejecting the request for review decided that this offer raised no substantial issue. In the subsequent unfair practice proceeding, respondent made a similar offer of proof, which the trial examiner and the Board rejected on the ground that its factual aspects had been assumed to be true in the Board's denial of review in the representation proceeding.

Of the items in respondent's offer, the only ones raising evidentiary issues whose resolution would require testimony were the allegations that Mrs. Stilley's name had not been removed from the payroll and that she was certain to be given a permanent position. These were assumed to be true by the Board. In these circumstances we cannot say that

the Board's conclusion was clearly erroneous and that it was required to afford respondent a hearing to prove these facts. It is only where an additional element goes to a substantial and material disputed factual point of a crucial issue that a hearing is required. It would be violative of the clear policy expressed by Congress, a policy which has received the highest approval, to require the invocation of a hearing in swiftly moving election contests because of the offering of an additional grain of information which is part of the elaborate considerations involved in resolving a single factual issue.

The issues raised by respondent's other offers, whether Mrs. Stilley was "transferred" or her employment "terminated", whether her employment at the New Castle store was "casual" and whether she was to be "recalled" to her new position, were in this context all legal conclusions to be drawn from the evidence and the underlying facts from which the inferences were to be made were substantially undisputed. It was not necessary to hold a hearing merely to give respondent an opportunity to focus the Board's attention on its view of the factual situation which was already so fully developed. This case is therefore governed by such cases as N. L. R. B. v. Clearfield Cheese Co., 322 F.2d 89 (3d Cir. 1963), N. L. R. B. v. Wilkening Mfg. Co., supra, N. L. R. B. v. Air Control Products, supra, and N. L. R. B. v. J. J. Collins' Sons, Inc., 332 F.2d 523, 524 (7th Cir. 1964). In *Capital Bakers,* supra, on which respondent relies, the proofs offered by the employer would have contradicted critical evidence which the regional director had accepted. To be distinguished also are those cases where, as in N. L. R. B. v. Joclin Mfg. Co., supra, the state of mind of the employee whose ballot was challenged was the critical disputed issue, or the credibility of witnesses was crucial to the resolution of a material factual dispute. N. L. R. B. v. Lord Baltimore Press, Inc., 300 F.2d 671 (4th Cir. 1962); N. L. R. B. v. Dallas City Packing Co., 230 F.2d 708 (5th Cir. 1956), enforcement granted, 251 F.2d 663 (1958); compare N. L. R.

B. v. Atkinson Dredging Co., 329 F.2d 158, 164 (4th Cir. 1964), cert. denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964).

 Our examination of the record makes it clear that the regional director and the Board, whose administrative determination is to be sustained unless clearly erroneous, exercised their expert judgment and effectuated the purposes of the Act in a reasonable and indeed sensible manner.

The Board's petition therefore will be granted and its order enforced.