**MARSHALL FIELD & CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 8154.

Circuit Court of Appeals, Seventh Circuit.
April 20, 1943.

Dissenting Opinion April 27, 1943.

Rehearing Denied May 26, 1943.

Ernest S. Ballard, Ferris E. Hurd, and Ralph E. Bowers, all of Chicago, Ill., for petitioner.

Robert B. Watts, Ernest A. Gross, and Ivar Peterson, N. L. R. B., all of Washington, D. C., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Petitioner challenges the correctness of the Board's determination of units appropriate for collective bargaining, in its Chicago retail department store.

It[1] contends: (1) the entire store should be designated as the appropriate unit, (2) the "gerrymander" method of grouping heterogeneous groups in the respectively designated units is at odds with the Company's established hierarchy of management organization, (3) the Board's designation of the appropriate units must *precede* election of bargaining representatives.

The instant proceeding arose through a request, in May, 1941, by the A. F. of L. Council[2] for an investigation and certification of representatives (Sec. 9 c proceeding). A week later the C. I. O. Union[3]

[1] Marshall Field & Company, an Illinois corporation, owns five retail department stores, only one of which is involved in this proceeding. This store, located on State Street, in Chicago, is composed of two buildings, the general retail store and the adjoining men's store.

[2] The A. F. of L. Council in this proceeding comprehends: Elevator Operators and Starters Union Local No. 66; Chicago Window Washers' Union, Local No. 34; Janitors' Union, Local No. 25, and Janitresses Union, Local No. 89.

[3] The C. I. O. Union is the Department Store Employees' Union, Local No. 291, affiliated with the United Retail, Wholesale and Department Store Employees of America.

filed a similar petition. A hearing was had on the consolidated petitions on July 14-18, 21-24, 1941, at which these unions, and several others[4] appeared.

On Nov. 7, the Board ordered an election and directed that it be held in seven different groups. An employee could vote for A. F. of L. Council or for C. I. O. or for neither. The following table shows the result of the election.

agent and thus became subject to the Board's order to cease and desist, which is the order we are asked by the petitioner to set aside, and by the Board, to enforce.

Petitioner calls our attention to the fact that it has approximately 8,000 employees in its State Street store, and the number of persons involved in these units is less than five hundred and they assert the

| Group No. | Nature of Employment | No. of employees | Choice on ballot. |
|---|---|---|---|
| 1. | Elevator and housekeeping division including section maids | 366 eligible<br>232 voted for C.I.O. | 1. C.I.O.<br>2. A.F.L.<br>3. Neither |
| 2. | Electricians | 32 eligible<br>14 voted for C.I.O. | 1. C.I.O.<br>2. IBEW<br>3. Neither |
| 3. | Firemen and oilers | 12 eligible<br>9 voted for A.F.L. | 1. C.I.O.<br>2. Firemen<br>3. Neither |
| 4. | Engineers and refrigerating engineers | 12 eligible<br>9 voted for A.F.L. | 1. C.I.O.<br>2. Engineer<br>3. Neither |
| 5. | Steam fitters and welder steam fitters | 7 eligible<br>4 voted for A.F.L. | 1. C.I.O.<br>2. Steamfitters<br>3. Neither |
| 6. | Plumbers | 3 eligible<br>no choice | 1. C.I.O.<br>2. Plumber<br>3. Neither |
| 7. | All remaining employees of engineering department | 56 eligible<br>45 voted for C.I.O. | 1. C.I.O.<br>(for or against) |

In its decision of February 12, 1942, the Board concluded from the fact that groups 1, 2, and 7 all selected the same C. I. O. local as their representative, the three groups, together, would be designated as constituting *one unit*. Since groups 3, 4, and 5 chose different A. F. of L. locals each such group was designated as constituting a separate unit.

It is this *subsequent* designation of units predicated upon employee elections which petitioner assails as illegal. It refused to bargain with the thus chosen bargaining

similarity of standards and working conditions and interchangeability of departmental employees and common supervisory heads all point strongly to the desirability and practicability of a single unit for the entire store. Supporting this urge, it points to the Board's rather consistent practice of designating a department store as a single unit.[5]

The order and decisions of the Board show clearly the basis and evolution of its determination of "appropriate units."[6]

---

[4] Local B 134, Int. Bro. Elec. Workers (I. B. E. W.); Int. Bro. of Firemen & Oilers, Local No. 7; Int. Union of Operating Engineers, Local 399; Steamfitters Protective Ass'n, Local 597.

[5] Re Lane Bryant, Inc., 42 N.L.R.B. 218.

[6] Decision, Nov. 7, 1941:
" * * * Under these circumstances, we are of the opinion that the elevator

The Labor Act provides:

"Sec. 9. (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That * * *

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." 29 U.S.C.A. § 159(a, b).

We are convinced that the request of the Labor Board for an enforcement order must be denied and the order by it entered must be vacated, for two reasons:

■ (1) The failure of the Board to designate the unit *before* holding the election. The Board should have decided upon the unit or units appropriate for collective bargaining, before it called an election (Section 9(b); Pittsburgh Glass Co. v. National Labor Relations Board. 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251;

Report of the Senate Committee, No. 573, 74th Congress 1st Session, page 14).

■ (2) The Board may not delegate the selection of the bargaining unit to the employees. While the wishes of the employees may be considered, the Board should not and, under the statute, can not leave this determination to either the employer or employee.

■ Even if the Board could leave the selection of the unit to the employees, the record before us shows no selection of such units by the employees. The only question submitted to the employees was the choice of a bargaining agent. From the election returns it appears that the employees were divided in their preference. In some instances the majority was for the C. I. O. local, while in other instances the majorities ran to the A. F. of L. locals.

The Board then divided that portion of the petitioner's employees here involved into the groups which it called units, determining the same by the majority vote in that particular unit. Having thus divided petitioner's employees somewhat artificially, the Board concluded that its action was sustained by the vote of the majority in such unit.

The employees never voted upon the question of the size of any unit, nor the number of units. They were never called upon to vote upon the appropriateness of

---

operators and starters, the window washers, the janitors, and the janitresses might together constitute a separate bargaining unit or they might appropriately be included as part of a single unit together with the employees in the engineering division, as proposed by the C. I. O. *In this situation, we find that the determining factor should be the desires of the employees themselves.* * * *

"We are of the opinion that the employees in the classifications claimed by the Firemen and Oilers, the Engineers, the Steamfitters, the Plumbers, and the I. B. E. W., respectively, might properly constitute separate bargaining units, or they might appropriately be included as part of a single unit composed of the employees in the housekeeping, elevator, and engineering departments of the Company at its State Street store. *In this situation, we find that the determining factor should be the desires of the employees themselves."* (Italics ours.)

Supplemental Decision, February 12, 1942.

"In its Decision, the Board withheld a

determination of the appropriate unit or units pending the outcome of the elections, stating that 'the determining factor should be the desires of the employees themselves' as expressed in the separate elections. The results of the elections in Groups 1, 2, and 7 show that a majority of the employees in each group have designated Department Store Employees Union, Local 291, affiliated with the United Retail, Wholesale and Department Store Employees of America, C. I. O., herein called the C. I. O., as their representative; we shall therefore combine the employees in said Groups in one unit and certify the C. I. O. as their representative. Separate units will be established consisting of the employees in Groups 3, 4, and 5, respectively since the employees in each of these groups selected an organization other than the C. I. O. as their representative; we shall certify the organization designated as such representative. Since the employees in Group 6 selected no representative, they will not be included in any unit."

but one group. There was evidence that in the campaign for membership, the unions sought votes, regardless of the units which the Board might subsequently create. The Board's own report shows rather conclusively that it did not make the selection of units but left the same to the employees who never made an out and out selection of the unit or the number of units. (See footnote 6.)

Petitioner argues that all of its employees should be placed in one unit. In support of this claim it cites the action of the Board in another instance where the retail store was unionized. Lane Bryant, Inc., 42 N.L.R.B. 218. We are not prepared, as a matter of law, to say that all retail stores should have but one unit. Its size, as well as other factors, might justify more than a single unit.

■ Primarily this question of the number and bases of bargaining units is for the Board whose experience entitles its judgment to almost complete finality. Unless its action is "arbitrary or capricious" (N. L. R. B. v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753; Marlin-Rockwell Corp. v. N. L. R. B., 2 Cir., 116 F.2d 586) we must, and will, accept it.

The request of the Board for an enforcement order is denied. The order heretofore entered is vacated and the cause sent back to the Labor Board, with directions to proceed as indicated in this opinion, namely, by first establishing the unit or units and subsequently conducting an election, if necessary.

MINTON, Circuit Judge, dissents.

MINTON, Circuit Judge (dissenting).

The majority says that the question "of the number and bases of bargaining units is for the Board whose experience entitles its judgment to almost complete finality. Unless its action is 'arbitrary or capricious' * * * we must, and will, accept it."

I think the Board's judgment is entitled to complete finality if it is "supported by evidence." This is a purely administrative proceeding. What is an appropriate unit and the representative of that unit are to be determined by the Board and not by us or by the Marshall Field Company. If the Board's findings are supported by evidence, I do not believe that we have the power to overthrow such findings by branding them as "arbitrary or capricious."

The majority does not say that there is no evidence to support the Board's findings. It finds fault with the way the findings were made. It says first, that there was failure to designate the unit *before* holding the election; and secondly, that by holding the election and reaching a decision in accordance with the election returns, the Board had delegated its power to the employees.

I find nothing in the statute to warrant the majority in saying that an election cannot be had until a unit has been designated. I see nothing wrong with the Board's procedure adopted here in making tentative findings as to what may be an appropriate unit and then seeking the employees' preference thereto. The employees' views were proper to be considered. Pittsburgh Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251.

The Board had considered voluminous evidence concerning the bargaining unit and the claims to representation therein. The units found to be appropriate for craft units and to be represented by the American Federation of Labor were composed of the employees traditionally found in the craft units, such as engineers, steamfitters, and firemen and oilers. The unit found appropriate for representation by the Congress of Industrial Organizations contained for the most part employees that could not be considered skilled or readily classifiable in the crafts. They were employees engaged in dusting, sweeping, polishing and cleaning, the operators of the elevators, and some employees of the Engineering Department outside of the crafts. All of them did a similar work relating to the housekeeping and maintenance of the store. The kind of work they did, the fact that they were unskilled and not readily classified as craft workers, and many other factors were considered by the Board. The Board made tentative findings that certain groups might be considered as appropriate units for collective bargaining. Having made that determination tentatively, the Board sought the views of the employees in those groups by means of an election. The Board never submitted to the employees the question of what was to be the bargaining unit. The Board advised with the employees only to determine whom the employees would have as bargaining representative in the unit determined by the Board tentatively to be appropriate.

This was no delegation of the Board's power. It was a method of consultation by means of election not prohibited by statute.

Suppose the Board had determined definitely and not tentatively the same units before the election, and then had held the election. Could there be any doubt that there is evidence in the record to support such action? Does the method of procedure, when not contrary to that laid down by the statute, vitiate the decision of the Board? I think not. The procedure should be liberal and flexible. The stick-in-the-bark legalisms of courtroom practice were not intended to be permitted to control the procedure of the Board. I do not think this Court can prescribe or veto the Board's procedure in a proceeding of this kind. Congress may, but it has not done so.

Because I think that there is evidence to support the Board's findings and that its procedure violates no provision of the statute, the Board's order, which has been advisedly disobeyed, should be enforced.