**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CERTIFIED TESTING LABORATORIES, INC., Respondent.**

No. 16455.

United States Court of Appeals Third Circuit.

Argued Sept. 12, 1967.

Decided Dec. 27, 1967.

Alan D. Eisenberg, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Janet Kohn, Attys., National Labor Relations Board, on the brief), for petitioner.

Woodrow J. Sandler, New York City, for respondent.

Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is a petition for enforcement under Section 10(e) of the National Labor Relations Act of an order of the National Labor Relations Board ("Board") directing respondent corporation to bargain with Local 84, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"). The order is based upon the Board's finding that respondent violated Section 8(a) (1) and (5) of the Act [1] by refusing to bargain collectively with the Union.

Respondent justifies its refusal by attacking the eligibility of an employee to vote in the representative election which led to the certification of the Union as the representative of the employees. In the alternative, respondent alleges that the Board erred in denying it a hearing on the question of the challenged ballot.

Respondent is engaged in testing, research and chemical analysis of soils, cement and steel at its New Jersey facility. In the furtherance of these activities, approximately ten (10) individuals are employed as inspectors-testers at the respondent's facility. It is not challenged that these inspectors-testers constitute a unit appropriate for collective bargaining purposes within the meaning of Section 9(b) of the Act. Pursuant to a stipulation for Certification Upon Election, the Regional Director for the Board conducted a secret-ballot vote among respondent's employees in the bargaining unit. A total of ten (10) ballots were cast and the tally showed five (5) ballots for the Union, four (4) ballots against it, and one (1) ballot challenged by the Union and not opened. Thus, the challenged

---

[1]. 29 U.S.C. § 158(a) (1), (5).

ballot could have affected the outcome of the election. The Union's challenge was sustained by the Board after an administrative investigation.[2] After its certification, the Union made a request to bargain collectively and the respondent refused. The present enforcement petition followed.

We distill the following undisputed facts from the record before the examiner. The challenged ballot was cast by an undergraduate student ("student-employee") of Business Administration working under a college work-study program known as a "co-operative education plan." This is a voluntary undergraduate-industry plan whereby students alternate six month periods of academic studies and industrial employment throughout their college careers. Any of the participants in the work-study program—the college, the employer, or the student-employee—is free to terminate the arrangement at the end of any period. After completing his first six month classroom cycle, the student-employee commenced his employment with respondent under the plan. While employed at respondent's facility the student-employee's duties as an inspector-tester, and his working conditions, were similar to those of the regular employees with whom he worked.

The Union, in challenging the ballot, contended that, as an undergraduate student in the work-study program, the student-employee did not share a sufficient community of interest with the other employees to be included in the bargaining unit and was therefore ineligible to vote. The Board found that the student-employee's " * * * university-based commitment indicates a marked divergence from other employees and distinguishes his community of interest from employees in the unit."

■ Eligibility of employees to vote in a representative election is tested by determining whether the employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of its bargaining agent. Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 69 A.L.R.2d 1174 (5th Cir. 1959). Whether such an employee is sufficiently identified with the bargaining unit to have a community of interest with its other members is a matter for the Board to decide. In discharging this duty with respect to temporary or part-time employees, one of the important factors considered by the Board is the reasonable likelihood that such employees will eventually become adequately identified in employment with those in the bargaining unit. See NLRB v. Joclin Mfg. Co., 314 F.2d 627 (2nd Cir. 1963); NLRB v. Belcher Towing Co., 284 F.2d 118 (5th Cir. 1960); and Brown-Forman Distillers Corp., 118 NLRB 454 (1957).

■ We turn to the undisputed facts in the record which the Board had before it, keeping in mind that if the Board's findings of fact are supported by substantial evidence on the record as a whole, we are not free to substitute our judgment. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ At the time of these proceedings the respondent did not employ college graduates as inspectors-testers at the facility involved.[3] The Board also found that the student-employee's Business Administration major was professionally unrelated to the kind of work he was doing for respondent. Thus, the record supported the conclusion that the student-employee did not have a reasonable expectancy of regular employment as an inspector-tester upon graduation. Furthermore, student-employees similarly situated in the college's work-study program were not required to continue their

---

2. This investigation was conducted pursuant to § 102.69(c) of the Board's Rules and Regulations (29 C.F.R. § 102.69(c)). A testimonial hearing was not held.

3. Respondent does employ college graduates as inspectors-testers at its other facilities. But there is nothing in the record to indicate that these employees possess Business Administration degrees.

participation in this program beyond any six month period. We think these factors constituted substantial evidence to support the Board's conclusion that this student-employee will not become sufficiently identified in employment with the members of the bargaining unit to have an adequate community of interest with them for present voting purposes. See NLRB v. Belcher Towing Co., supra. We emphasize, however, that we are considering this matter under our narrow power of review. We do not imply that had the Board reached the opposite result, its position would have been untenable.

We do not consider whether certain other evidence of intent noted in the Board's proceedings was relevant to a determination of this type of issue. We say this because we are satisfied that under the governing standard of review, we could not in any event overturn the Board's decision. Thus we express no opinion on the particular value of the evidence of the student-employee's uncertainty as to his future employment plans or evidence that the respondent offered him employment after graduation. It must be apparent that if challenges to the right to vote as a member of a bargaining unit unduly embrace such matters, the true objective of the proceedings as well as the need for reasonable expedition may be substantially impaired.

The parties argue at length as to whether the student-employee was a "temporary" or a "part-time employee." We think that the labeling process is not particularly helpful here. The Board was concerned with ascertaining whether the student-employee had a sufficient community of interest with the other members of the bargaining unit to be entitled to vote therein. The facts concerning his student-work relationship were fully explored and we think the Board's conclusion did not require an application of the labeling process to determine the student-employee's right to vote.

■ We next come to the respondent's contention that the Board erred in refusing to grant a testimonial hearing on the question of the challenged ballot.

In respondent's conclusion to its exceptions to the Regional Director's recommendations on the challenged ballot, it requested the Board to order a hearing " * * * so that all the facts can be fully developed under oath." However, no tender of proof was then made. Sometime after the entry of the certification order the examiner issued the following show cause order:

"ORDERED that the Respondent on or before April 11, 1966, submit to the undersigned in the form of an offer of proof in writing any newly discovered evidence or evidence not available to it at the representation hearing and upon which Respondent relies, and further to show cause why the issues raised by the pleadings herein should not be resolved without any further hearing other than its response to this Order to Show Cause. Said response is to include Respondent's position and arguments on any legal issues."

We approach the decision on the issue having in mind that "the parties are entitled to such a[n evidentiary] hearing if substantial and material factual issues are raised * * *." NLRB v. Sun Drug Co., 359 F.2d 408, 414 (3rd Cir. 1966).

The Regional Director based his decision on information secured in an administrative investigation into the Union's allegations when it challenged the ballot. In respondent's exceptions filed to the Regional Director's Report, no additional substantial and material facts overlooked by the Regional Director were presented. Respondent made an offer of proof that the statistics of the co-op college show that fifty percent (50%) of its co-op students eventually take full-time employment with their industry employer. Even assuming the Board could find that the student-employee would return after graduation as a regular employee, it would not neces-

sarily follow that he would have the requisite community of interest to vote in this bargaining unit. Therefore, we do not think it was sufficiently material to require the Board to conduct a hearing thereon. The only other offer of facts by respondent, that the student-employee would take courses which were related to his position as an inspector-tester, was equally insufficient to require a hearing. The student-employee's college pursuit was in the field of Business Administration, a course of studies professionally unrelated to his scientific-technical employment as an inspector-tester.

Respondent's other exceptions consisted of disagreements as to the legal conclusions reached from the evidence. These exceptions left undisputed the underlying facts from which the inferences were drawn. Substantial and material factual issues not having been raised, the Board, in accordance with its rules and regulations [4] did not err in finding that no hearing was necessary on the exceptions to the Regional Director's Report and Recommendations. See NLRB v. Sun Drug Co., 359 F.2d 408 (3rd Cir. 1966).

The unfair labor practice proceeding and election are in reality one when an employer refuses to recognize a certified union in order to test the certification. See Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1949). An employer may not relitigate issues determined at the election stage absent a showing of newly discovered or previously unavailable material evidence. See Pittsburgh Plate Glass Co., supra. Although such evidence was requested by the examiner in his show cause order, no such showing was made by respondent and "it was not necessary to hold a hearing merely to give respondent an opportunity to focus the Board's attention on its view of the factual situation which was already so fully developed." NLRB v. Sun Drug Co., supra, 359 F.2d at 416.

Respondent contends that the Board's determination that a college co-op student does not have the same community of interest as the other employees in the unit contradicts its own previously established law. An examination of the Board's decisions cited by respondent does not support its contentions. Three cases were cited by respondent in its brief for the proposition that "co-op students have been permitted, in other cases, to vote in NLRB elections." These cases, The National Cash Register Company, 74 NLRB 1350 (1947), and The National Cash Register Company, 95 NLRB 27 (1951), involved high-school and not college co-op students.[5] The importance of this distinction was noted by the Board in the 1951 National Cash Register case where, after basing its decision on the findings of the earlier case, it stated that " * * because it is evident that the high school co-operative students have a reasonable expectation of eventually becoming regular employees, we shall include them in the unit * * *."[6]

The other two Board decisions cited by respondent, Westbrook Manufacturing Company, 72 NLRB 851 (1947), and The Plastex Corporation, 72 NLRB 1341 (1947), concern the status of veterans who were training with employers pursuant to an on the job training program of the Veterans Administration. The Board in the Westbrook decision held

---

4. 29 C.F.R. § 102.69(e) (1).

5. The third case, Pearl & Werner d/b/a National Torch Tip Co., cited by respondent, was an unreported decision by the Board in 1951. A document was submitted by the Board which it believes to be a copy of the decision. It indicates that one of the factors emphasized by the Board in allowing the student workers (apparently high school students) to vote in the bargaining unit was the student worker's prospects of eventually achieving permanent employee status with the employer. Presumably such employment was to be in the same bargaining unit.

6. The National Cash Register Company, 95 NLRB 27, at 30 (1951). This case also involved college co-op students who were denied membership in the bargaining unit because their work was merely incidental to their education. The National Cash Register Company, supra.

that the veteran trainees should be included in the bargaining unit since they had the same working conditions as ordinary employees and "the trainees have a *reasonable expectancy of becoming regular employees* upon completion of their training program * * *," 72 NLRB at 853 (emphasis supplied). The Board in Plastex relied upon its earlier decision in Westbrook in finding that the veteran trainees involved in that case should also be included in the bargaining unit.

The order of the Board will be enforced.