UNITED GLASS AND CERAMIC WORK-
EES OF NORTH AMERICA, AFL-
CIO-CLC and its Locals 1, 5, 9, 19, 33
and 418, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Libbey-Owens-Ford Company, Intervenor.

No. 71-1599.

United States Court of Appeals,
Third Circuit.

Argued April 10, 1972.

Decided June 21, 1972.

Abraham L. Friedman, Rothbard, Harris & Oxfeld, Newark, N. J., for petitioner; Emil Oxfeld, Newark, N. J., David Clayman, Columbus, Ohio, of counsel.

Eugene Granof, N. L. R. B., Washington, D. C., for petitioner.

Arnold F. Bunge, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for intervenor.

Peter G. Nash, General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, Janet Skaare Morris, Atty. for N. L. R. B.

Before HASTIE, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This petition by the United Glass and Ceramic Workers of North America, AFL–CIO–CLC and its Locals 1, 5, 9, 19, 33 and 418 (Union) challenges an April 16, 1971, order of the National Labor Relations Board (Board) dismissing an unfair labor practice complaint filed by the General Counsel of the National Labor Relations Board. The alleged unfair labor practice was based on the failure of the Libbey-Owens-Ford Company (Company) to bargain collectively with a multiplant unit including its plant in Brackenridge, Pennsylvania. The issues before this court concern existence of a valid determination by the Board that the multiplant unit was "the unit appropriate for the purposes of collective bargaining."[1]

The Union has been the certified collective bargaining representative of the production and maintenance employees of the company in a multiplant unit since 1939. The size and composition of the multiplant unit has varied as plants were opened and closed and, by July 13, 1966, it included eight plants. At this point the Union filed a unit clarification (U. C.) petition pursuant to the Board's rules. 29 C.F.R. § 102.60(b), to clarify the multiplant unit by adding the company's plants in Lathrop, California, and Brackenridge, Pennsylvania. These two plants had previously constituted separate bargaining units and the Union was recognized by the Company as the collective bargaining agent for all three units.[2] On September 8 and 9, 1966, a hearing on the U. C. petition was held and all parties appeared and participated. The case was then transferred to the Board and on January 12, 1968, it issued its "Decision and Direction of Election." The majority of the Board found that the existing separate plant units and an employer-wide multiplant unit would be presumptively appropriate. Therefore, it ordered that a self-determination election should be held at the Lathrop and Brackenridge plants to determine which unit the employees of those plants favored. The Board dismissed the Company's objection that the U. C. procedure was inappropriate in this situation and that a representation petition under Section 9(c) should have been filed. Libbey-

---

1. National Labor Relations Act, 29 U.S.C. § 159(b) (Section 9(b)).

2. The Brackenridge Plant was organized by the Union in 1936 and bargained as a separate unit from the time the plant was acquired by the Company in 1943. The Lathrop Plant was newly constructed and had been designated as a separate unit at the time the Union was appointed as the collective bargaining representative.

Owens-Ford Glass Company, 169 N.L.R.B. 126 (1968). Board members Fanning and Jenkins dissented on the grounds that there was no statutory authority for the Board to conduct an election in the absence of a question of representation.[3] The Company filed a motion for rehearng, which was denied, and on March 20, 1968, elections were held at which the employees at both the Lathrop and Brackenridge plants indicated their support for the multiplant unit. On December 10, 1968, the Board issued an order clarifying the existing mutiplant unit to include the Brackenridge and Lathrop plants.[4]

During the period between the hearing on the U. C. petition and the issuance of the Board's order clarifying the unit, the Company opened a new plant for the production and fabrication of glass in Mason City, Iowa. On August 10, 1967, the Union filed a representation petition, asking to be certified as a collective bargaining agent for a unit consisting of the Mason City employees, and on December 8, 1967, they were so certified by the Regional Director.

In subsequent contract negotiations, the Company agreed to the inclusion of the Lathrop Plant employees in the multiplant unit but refused to include the Brackenridge employees.[5] When the Brackenridge contract expired on October 1, 1969, the Company continued in its refusal to bargain with the employees of that plant as part of the multiplant unit, but did bargain with them as a separate unit. As a result, the Union filed an unfair labor practice charge against the Company for its refusal to bargain with the multiplant unit which had been certified by the Board. On December 31, 1969, the General Counsel of the Board filed the complaint in the unfair labor practice proceeding.[6] The Company, in its answer to the complaint, asserted that the underlying unit clarification determination was not supported by the evidence and was made in excess of the Board's authorized powers. A hearing was scheduled for March 25, 1970.[7] The hearing examiner refused to consider the validity of the underlying U. C. proceeding and found that an unfair labor practice had been committed. The Company filed exceptions to the trial examiner's decision and renewed its attack on the underlying U. C. proceeding.

3. Abodeely, The NLRB and The Unit Clarification Petition, 117 U.Pa.L.Rev. 1075 (1969). See note 5, infra.

4. The long delay in these proceedings resulted from the Company's institution of proceedings in the United States District Court for the District of Columbia. On March 8, 1968, the district court issued an injunction restraining the Board from conducting the self-determination elections on the grounds that there was no statutory authority for such elections in the absence of a question of representation. Libbey-Owens-Ford Co. v. McCulloch, 57 L.C. 77, Civil Action No. 507–68 (D.D.C.1968). The injunction was dissolved on appeal on the ground that the court had no jurisdiction to review the Board's determination in a representation proceeding absent a showing of a violation of a clear, specific and mandatory provision of the Act by the Board. McCulloch v. Libbey-Owens-Ford Glass Co., 131 U.S. App.D.C. 190, 403 F.2d 916 (1968). See Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941).

5. The Company also refused requests that the Mason City Plant be included in the multiplant unit.

6. After the issuance of the complaint, the Union and the Company continued to bargain and on February 7, 1970, entered into a contract which covered only the Brackenridge employees.

7. The Company, in its answer, for the first time attacked the Board's finding that the multiplant unit was presumptively appropriate on the grounds that it was not employer-wide since it failed to include the Mason City Plant. On the morning of the hearing, a U. C. petition was filed to include the Mason City Plant in the multiplant unit. At the hearing counsel for the Company moved that the new U. C. proceeding be consolidated with the unfair labor practice proceeding and that a continuance be granted to permit investigation of the new petition. A similar motion, including a request for reopening and reconsideration of the earlier U. C. proceeding, was filed before the Board on April 23, 1970, and was denied by an order of June 8, 1970.

On April 16, 1971, the Board issued its decision and order and, by a 2-1-2 vote, refused to enforce the decision of the trial examiner and dismissed the complaint. Members Fanning and Jenkins adopted the rationale of their prior dissents in the underlying U. C. proceeding and held that the Board did not have sufficient statutory authority to direct and conduct the self-determination elections. The order clarifying the unit, therefore, could have no force or effect and could not serve as the basis for the complaint.

Chairman Miller concurred in the result but disagreed with the finding that the Board lacked statutory authority to conduct the elections. He reasoned that the Board had not followed the *Libbey-Owens-Ford* doctrine in its subsequent cases and that a return to the prior procedure of "leaving the matter of changes in size of a multiplant bargaining unit to be worked out by agreement of the parties" would best fulfill the Board's duty to foster stable collective bargaining relationships. The two remaining members voted to enforce the decision of the trial examiner.

In reviewing the Board's dismissal of the unfair labor practice complaint, this court must examine the underlying unit determination since the unit proceeding and the complaint are really one.[8] Normally a challenge to a ruling of the Board determining the appropriate bargaining unit is not subject to direct review and must await an unfair labor practice complaint predicated upon the unit determination.[9] In the instant action, the Company has challenged at all stages of this proceeding not only the Board's finding of the appropriate unit but the authority of the Board to make such a determination in the manner and under the procedures that it did. In dismissing this complaint, the Board relied on its determination that the underlying U. C. order was involved and thus could not serve as the basis for an unfair labor practice complaint. While we agree that it was proper for the Board to examine the validity of its underlying unit determination,[10] we have concluded that the reconsideration of this issue required a finding by at least a majority of the Board of the appropriateness of the units involved and we remand for such a determination.

The company raises two separate grounds of invalidity of the Board's actions in this case. The first is that the U. C. proceeding was an unauthorized mechanism for the consolidation of existing collective bargaining units under the statutory language, and the second is that the Board lacked the authority to conduct an election in the absence of a question of representation.

As to the first contention, we find that the Board acted within its statutory authority in conducting a U. C. proceeding designed to consider the merger of existing collective bargaining units. The Board is granted broad powers under Section 9(b) of the Act to determine appropriate bargaining units,[11]

8. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 154–158, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) ; N. L. R. B. v. New Enterprise Stone and Lime Co., 413 F.2d 117, 118 (3d Cir. 1969) ; N. L. R. B. v. Certified Testing Laboratories, 387 F.2d 275, 279 (3d Cir. 1967).

9. See note 4, *supra*.

10. Normally matters determined in an underlying certification proceeding may not be relitigated in a subsequent unfair labor practice case absent newly discovered or previously unavailable evidence or a significant change in circumstances. Pittsburgh Plate Glass Co. v. N. L. R. B.,

313 U.S. 146, 161–162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) ; N. L. R. B. v. Certified Testing Laboratories, Inc., 387 F.2d 275, 279 (3d Cir. 1967) ; C.F.R. § 102.66 (f). *This policy, however, cannot act as a bar to Board reconsideration of its authority to conduct a subsequent clarification proceeding. See* In re N. L. R. B., 304 U.S. 486, 492, 58 S.Ct. 1001, 82 L.Ed. 1482 (1938).

11. "(b) The Board shall decide in each *case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of*

and is granted the authority under Section 10(d) to change or modify its order in such manner as it may deem proper any time prior to the filing of a court challenge to the order.[12] Pursuant to these powers, the Board adopted its U. C. procedures which are embodied in Rule 102.60(b):

"A petition for clarification of an existing bargaining unit or a petition for amendment of certification, in the absence of a question concerning representation, may be filed by a labor organization or by an employer."

The rule was adopted in recognition of the fact that changes in circumstances might necessitate changes in a collective bargaining arrangement and that initial unit determinations made in a representation proceeding are not immutable.

In Carey v. Westinghouse Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1963), the Supreme Court sanctions the use of the U. C. procedure. The Court relied on the existence of a dispute which was representational in nature as the predicate for invoking the U. C. procedure. A representational dispute was described as one "involving the duty of the employer to bargain collectively with the representative of the employees as provided in § 8(a) (5)."

In Carey the representational dispute involved the inclusion of disputed category of employees in an existing collective bargaining unit. The U. C. procedure has traditionally been used in such cases and in those where additional employees are claimed as an accretion to an existing unit. In these type cases, the dispute is representational in that the collective bargaining representative of certain employees is at issue. In the instant case, the dispute is not representational in the same sense because the only dispute relates to unit scope. However, it is representational in the broader sense that it involves a question of representation for purposes of collective bargaining in an appropriate unit.[13] The existence of such a representational dispute involving only unit scope is sufficient to allow the Board to utilize its U. C. procedure.[14]

---

collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided*, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards." 29 U.S.C. § 159(b) (1970).

12. 29 U.S.C. § 160(d) (1970).

13. In *Carey*, after setting out the existence of a controversy involving the duty of an employer to bargain collectively with the representative of the employees as provided in § 8(a) (5) as the basis for a representational dispute, the court quoted § 8(a) (5), as follows:

"It shall be an unfair labor practice for an employer—. . . to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

It then went on to say, "Section 9(a) provides that the representatives shall be chosen by the majority of employees 'in a unit appropriate' for collective bargaining. 29 U.S.C. § 159(a). Section 9(b) gives the Board authority to determine what unit is an appropriate one. . ."

It follows that a question involving unit scope is a representational one since a refusal to bargain with a unit found to be appropriate could serve as the basis for an 8(a) (5) violation.

14. The Company contends that the U. C. procedure cannot be used unless a "question of representation" as contemplated by § 9(c) exists. *See* Abodeely, The NLRB and The Unit Clarification Peti-

Chairman Miller, in his concurring opinion, stated that although he found ample authority to establish the unit appropriate for the purposes of collective bargaining, including the authority to merge existing units, he felt that the Board's duty to foster stable collective bargaining relationships was better discharged by leaving such questions to be worked out by the parties. We assume that on remand, given its authority to combine existing units, the Board will consider the desirability of exercising this authority in light of its obligation to select units which will further the policies of the Act.[15]

The Company's second contention is that the Board lacked the authority to conduct the election in the absence of a question of representation. We disagree and find that the Board does have the requisite authority; however, in this case, a majority of the Board failed to make the necessary finding of appropriateness which is a prerequisite of such elections.

■■ Section 9(b) of the Act provides that "The Board shall decide . . . the unit appropriate for the purposes of collective bargaining . . . " and such determination may be made in the absence of a question of representation.[16] Employee views are highly relevant to such determinations,[17] and, in the absence of statutory prohibition, the Board has implied powers to solicit such views.[18] Ancillary to its authority to determine whether existing bargaining units should be merged, the Board has implied authority to determine all relevant facts, including employee preference, by the most practical means available.[19]

■ The finding of authority to conduct the questioned elections does not end our analysis of this case. Elections of employees to determine their preference in a U. C. proceeding are only proper in the limited situation where the Board has made a finding that two or more units are equally appropriate. Absent such a finding of mutually appropriate units, the Board, by conducting an election to determine employees' preference, improperly delegates to the employees its statutory obligation to determine the appropriate unit.[20] We agree with the reasoning expressed in N.L.R.B. v. Weyerhaeuser Co., 276 F.2d 865, 872 (7th Cir. 1960), that an election is proper only in those circumstances where the Board has first fulfilled its statutory obligation to select an appropriate bargaining unit.

In the instant case, the Board majority in the underlying U. C. procedure first

tion, 117 U.Pa.L.Rev. 1075 (1969). The U. C. rule, by its terms, is inapplicable where a question of representation, as opposed to a representational dispute, is involved. A dispute may be representational in the § 9(c) sense and not rise to the level of a question of representation. The mere absence of such a 9(c) representational issue in the instant case does not deprive the Board of the authority to conduct the proceeding in view of the existence of a representational issue under § 9(a) and (b).

15. *See* Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1972).

16. See note 14.

17. Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 156, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N.L.R.B. v. Ideal Laundry and Dry Cleaning Co., 372 F.2d 307, 308 (10th Cir. 1967); N.L.R.B. v. Underwood Machinery Co., 179 F.2d 118 (1st Cir. 1949); N.L.R.B. v. Botany Worsted Mills, 133 F.2d 876, 880 (3d Cir. 1943).

18. Section 11 of the Act grants broad investigative powers, including the right to issue subpoenas, to the Board in order to conduct "all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 9 and 10."

19. The Board clearly has authority to subpoena employees to solicit their views or to dispatch Board employees to canvass a plant. An election is a clearly more practical and less cumbersome means of soliciting such views. Cf. N.L.R.B. v. Weyerhaeuser Co., 276 F.2d 865, 872 (7th Cir. 1960).

20. Marshall Field and Co. v. N.L.R.B., 135 F.2d 391 (7th Cir. 1943).

determined that both the single-plant Brackenridge unit and the employer-wide unit were presumptively appropriate and then ordered the election. Members Fanning and Jenkins relying on their position that the Board had no statutory authority to conduct the election, did not make a determination of the appropriateness of either unit. In the unfair labor practice decision, members Fanning and Jenkins relied on their earlier dissents and once again expressed no opinion on the appropriateness of the unit.

By reconsidering in 189 N.L.R.B. No. 139 (Opinion of April 16, 1971) the U. C. order of 1968,[21] we conclude that members Fanning and Jenkins were obligated to express their opinion on the appropriateness of the unit before turning to the issues raised by the election. In such reconsideration proceeding, the Board did not fulfill its statutory duty to determine the appropriateness of the unit, since a majority of the Board expressed no opinion on this question.

■ Members Fanning and Jenkins, as well as Chairman Miller, have not indicated whether they are in agreement with the earlier determination of the Board that the two units were presumptively appropriate.[22] We remand for such a determination unless a majority of the Board adheres to Chairman Miller's view that, under the circumstances of this case, the determination of the unit should be left to collective bargaining or decides not to proceed with the issues presented by this petition for review for other reasons.[23]

The April 16, 1971, order will be vacated with directions that the Board reconsider its case 6–CA–4771 in light of this opinion.

21. In their majority opinion, members Fanning and Jenkins stated: "The Respondent herein renews its attack on the proceedings on the UC petition. We find merit in its position."

22. We cannot merely assume that their absence of comment indicates acceptance of the earlier Board finding. The Board must state reasons for its finding of appropriateness. *See* N.L.R.B. v. Metropolitan Life Ins. Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) ; Local 467, Upholsterers' International Union of North America v. N.L.R.B., 419 F.2d 179, 182 (3d Cir. 1969).

23. On remand, the Board, under its discretionary powers to consider information which could have been presented at an earlier proceeding, may find that the existence of the Mason City Plant as a separate bargaining unit prohibits a finding that the allegedly employer-wide unit is presumptively appropriate. While it is true that the Board is not obligated to consider evidence in an unfair labor practice proceeding unless it was previously unavailable or newly discovered, N.L.R.B. v. Puritan Sportswear Corp., 385 F.2d 142 (3d Cir. 1967), this rule does not prohibit the Board from considering evidence which it feels may aid in its determination.