NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOUTHERN INDIANA GAS AND
ELECTRIC COMPANY,
Respondent.

No. 87–2477.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1988.

Decided Aug. 3, 1988.

Rehearing and Rehearing In Banc
Denied Sept. 13, 1988.

John Burgoyne, N.L.R.B., Washington, D.C., for petitioner.

Arthur D. Rutkowski, Bowers, Harrison, Kent & Miller, Evansville, Ind., for respondent.

Before WOOD, Jr., POSNER, and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner, National Labor Relations Board, seeks to enforce its order against Respondent, Southern Indiana Gas and Electric Company, located in Evansville, Indiana. The Board's order required the company to cease and desist from its unlawful conduct and from, in any like or related manner, interfering with, restraining, or coercing its employees in the exercise of their statutory rights. In particular the order requires the company to bargain with the union in the unit found appropriate and to post a remedial notice.

The company is a public utility, which supplies electricity and natural gas to its customers. Beginning in 1944 the company's production, transmission, and distribution employees, presently numbering about 550, have been represented by Local Union No. 702, International Brotherhood of Electrical Workers and have worked under a series of negotiated collective bargaining agreements.

There are, however, two or three employees referred to as disconnected/bill collectors who are not union members and whose positions are not covered by the collective bargaining agreement. This case involves only the union's representation of two or three employees. Considering the size of this group and the obvious lack of merit in the company's position, we do not understand why the company has stubbornly refused to comply with the Board's order that it treat these two or three employees as members of the existing 550–member

unit. Bringing this minimal case into this court is a waste of resources; a public utility should demonstrate greater public responsibility. This court directs that the Board's order be enforced forthwith in all particulars.

## I. FACTUAL BACKGROUND

In September, 1985, the union filed a petition with the Board seeking to represent the two or three collectors. In October the parties entered into a Stipulation for Certification Upon Consent Election. This stipulation provided for a self-determinative election to give the collectors an opportunity to say whether they would like to join the existing bargaining unit, or whether they preferred to remain unrepresented. The Board conducted the election for the three eligible voters, and the result was a unanimous choice to join the existing bargaining unit. An objection followed, which resulted in another stipulation for a rerun election under the same terms and conditions as the first. In February, 1986, the Board conducted the second election, and again the result was an overwhelming unanimous vote of three for the union. Thereafter, in March, 1986, the Regional Director certified the results of the election and provided that the union "may bargain" for the collectors as part of the group of employees in the original unit, which the union currently represented.

That same month bargaining began. The union sought to bargain about contract provisions for the collectors' wages, layoffs, promotions, and other issues. The company came to the table only to negotiate a separate and distinct agreement for the collectors, who would constitute a separate and distinct bargaining unit. The company would not recognize the three collectors to be a part of the existing unit for the other employees, but sought to create a separate unit for these three collectors. The union responded that the issue of whether the collectors were part of the

existing unit had been decided by the election, and the collectors were now part of that unit. The company disputed that was what the election meant. It was the company's position that the Board had never certified that the union in fact represented the collectors as part of the existing unit but had only certified that the union "may" bargain for the collectors. Further, it was the company's position that there had been no actual findings that the collectors were part of the existing unit. Negotiations ceased, and in June, 1986, the union filed an unfair labor practices charge, alleging that the company's refusal to bargain with the collectors as part of the existing unit pursuant to the election violated the National Labor Relations Act.[1] The company responded that its position was correct, as the union had never been properly certified as the bargaining representative of the existing unit as augmented by the two or three collectors.

An administrative law judge held a hearing and in relevant part found that the company was in violation of section 8(a)(1) and (5) of the Act[2] because of its refusal to bargain with the union concerning the collectors inclusion in the existing unit. The Board agreed and now seeks the enforcement of its order.

## II. DISCUSSION

■■■■ We understand the company's position to be that the Board failed to make a determination that the existing unit was the appropriate unit to bargain for the collectors because the Board improperly delegated to the employees through a *Globe* self-determination election its statutory obligation to make the determination. In a *Globe* election, the name adopted from *Globe Machine & Stamping Co.,* 3 N.L.R.B. 294 (1937),[3] fringe group employees are accorded the opportunity to choose between being represented as their own distinct group or being represented as part of the existing larger unit. The company now

1. 29 U.S.C. §§ 1–651.

2. 29 U.S.C. § 158(a)(1), (5).

3. *See NLRB v. American Printers & Lithographers,* 820 F.2d 878, 880 (7th Cir.1987), *enforcing* 275 N.L.R.B. 1490 (1985); *Federal–Mogul Corp.,* 109 N.L.R.B. 343 (1974).

says that its position was not that the collectors had to be a separate unit, only that the company was willing to bargain over which unit was designated to bargain for the collectors.

It may be helpful to review the usual procedures followed when a union representing most of the employees petitions to represent some fringe employees. The Board begins a two-step process. First, the Board conducts a representation proceeding to determine whether the larger existing unit together with the fringe employees would constitute an appropriate bargaining unit. The appropriateness of the unit's representation may be contested,[4] which it appears the company seeks to do by belatedly trying to bargain with the union about it. The initial hearing about the appropriate unit, however, may be waived by stipulation between the parties.[5] Once the parties enter into a stipulation of that nature the parties are bound by their agreement unless it violates the Act or Board policy. In the present case a stipulation was entered into. The representation proceeding was therefore rendered unnecessary. The second step of the process is a self-determination election to give the fringe employees their choice, whether they preferred to be represented by the existing unit, which in this case has been stipulated to be an appropriate unit, or whether they preferred to remain unrepresented.

The company seeks to avoid the clear impact of the stipulation it admittedly entered into and engages in extraneous arguments which are not applicable in view of that stipulation. We therefore need not pursue those arguments in this opinion. The company stipulated away any right it had to contest or negotiate about the appropriate bargaining unit. The stipulation left it to the collectors themselves to decide by the self-determination election only whether they would be represented as a new part of the existing unit, or remain unrepresented. If the majority of the collectors did not choose the existing unit, that would indicate that the collectors preferred to continue unrepresented as they had been in the past. By the election, however, the collectors chose to become a part of the existing unit. That was the end of that phase. Therefore the company was bound by the stipulation and the self-determination election to accept the existing unit and to begin the negotiations about the matters the union originally sought to negotiate with the company on behalf of the collectors. That should have been done over two years ago for this small group of employees without the expenditure of the time, money and effort of the parties, and the intervention of this court.

ENFORCED.

---

4. *See* section 9(c)(1) of the Act (29 U.S.C. 159(c)(1)) and section 102.62–.69 of the Board's Rules and Regulations, series B as amended (29 C.F.R. § 102.62–.69).

5. *See* section 9(c)(4) of the Act (29 U.S.C. § 159(c)(4)) and section 102.62 of the Board's Rules and Regulations.