## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## RAYTHEON COMPANY, Respondent.

### No. 90–1195.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1990.

Decided Nov. 2, 1990.

Thomas Royall Smith, with whom Pamela E. Tracey and Jackson, Lewis, Schnitzler & Krupman, Boston, Mass., were on brief, for respondent.

David A. Fleischer, Atty., N.L.R.B., with whom Jerry M. Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., were on brief, for petitioner.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

The National Labor Relations Board requests this court to enforce its order directing Raytheon Company to bargain with the Raytheon Guards' Association. Raytheon opposes the order on the ground that the Board exceeded its discretion by directing self-determination elections among the eight guards at two of Raytheon's New Hampshire facilities and by treating a vote for the Union as a vote for inclusion in the existing bargaining unit of Raytheon guards represented by the Union. We find that the Board did not exceed its discretion and grant the Board's petition to enforce its order.

## I. BACKGROUND

The Union has represented the guards at Raytheon's facilities in Massachusetts (except the Quincy plant) and in Nashua, New Hampshire, for many years. At the time of the events in this case, the unit consisted of approximately 298 guards. On December 21, 1987, the Union filed a petition requesting that an election be held among the guards employed at Raytheon's Manchester and Pelham, New Hampshire, facilities. The petition requested that a vote for representation be considered a vote to be included in the existing bargaining unit already represented by the Union. This type of election is known as a self-determination, or *Armour–Globe*, election, in which a group of employees votes on whether to join a previously existing bargaining unit. *See Globe Machine and Stamping Co.*, 3 N.L.R.B. 294 (1937); *Armour and Company*, 40 N.L.R.B. 1333 (1942).

After a hearing, the Board's Regional Director found that the four Pelham guards and the four Manchester guards could appropriately be included in the existing bargaining unit. A separate self-determination election was directed at each of the two facilities.

Elections were held on March 17, 1988. Pelham guards voted 2 to 1 in favor of the Union, and Manchester guards voted 4 to 0 in favor of the Union. Raytheon filed objections to the elections, which a hearing officer determined were without merit. The officer recommended that certifications of representation issue for the two *separate* units. The Board adopted the hearing officer's findings and recommendations.

The Union filed a motion to clarify the certification to make it clear that the Pelham and Manchester guards were to be included in the *existing* unit, rather than stand alone as *separate* units, as the certification had erroneously stated. Over Raytheon's objections, the Board granted the Union's motion so that the certification was modified to state that the Union was the bargaining representative of the Pelham and Manchester guards as part of the existing unit.

The Board expressly disclaimed any intent to apply the contract covering the existing unit to the newly added guards. *See Federal–Mogul Corp.*, 209 N.L.R.B. 343 (1974) (neither party is obligated to apply terms of existing bargaining agreement to newly added unit employees). Rather, the effect of the election and certification was to require Raytheon to bargain with the Union over the Pelham and Manchester guards. Raytheon, however, refused to bargain. In response to the Union's unfair labor practice charge, Raytheon admitted its refusal to bargain, but asserted that the Board's certification of the Union was improper.

The Board determined that all issues asserted by Raytheon in response to the unfair labor practice charge either were or could have been litigated in the prior representation proceeding. Finding that Raytheon had violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5), the Board ordered Raytheon to cease and desist, to bargain on request with the Union, and, if an understanding was reached, to embody the understanding in a signed agreement. Enforcement of that order is now sought here.

## II. STANDARD OF REVIEW

The only issue before this court is whether the Board acted within its discretion in certifying the Union as the bargaining representative for a unit which included the historic unit as well as the newly added Pelham and Manchester guards. Our review of the Board's determination is narrow:

> The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed.

*Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). Where, as here, there is no challenge to the findings of fact, our review is restricted to an analysis of whether the Board abused its discretion. *See Nightingale Oil Co. v. NLRB*, 905 F.2d 528, 535 (1st Cir.1990); *Friendly Ice Cream Corp. v. NLRB*, 705 F.2d 570, 575 (1st Cir.1983). The burden of showing an abuse of discretion is "a heavy one." *NLRB v. S. Prawer & Co.*, 584 F.2d 1099, 1101 (1st Cir.1978).

## III. THE ARMOUR–GLOBE DOCTRINE

In *Globe Machine and Stamping Co.*, 3 N.L.R.B. 294 (1937), a petitioning union claimed that there were three separate bargaining units in the plant, whereas an intervening union argued for treating the plant as one overall unit. The Board found that either arrangement would result in appropriate bargaining units, and concluded that the question was so evenly balanced that the determining factor should be the desire of the employees themselves. Each of the three separate units was given the opportunity to vote for the petitioning union (and representation as a separate unit), the intervening union (and representation as an overall unit), or no union. The *Globe* procedure thereby allows employees "to determine the scope of a unit by allowing them to cast a vote for each of several potential units which the Board has determined are appropriate." *NLRB v. Lorimar Productions, Inc.*, 771 F.2d 1294, 1301 (9th Cir.1985). Courts have sanctioned the procedure. *See id.; NLRB v. Underwood Machinery Co.*, 179 F.2d 118, 121 (1st Cir.1949).

The *Globe* self-determination doctrine was extended in *Armour and Company*, 40 N.L.R.B. 1333 (1942). In *Armour*, the representative of an historical unit was petitioning to represent three appropriate units which had previously been represented by three separate craft unions. The Board concluded that each of the three separate units could be added to the historical unit if the employees so desired. Elections were directed among employees in the three craft units only. Thus, an *Armour–Globe* election permits employees sharing a community of interests with an already represented unit of employees to vote whether to join that unit.

*Armour* itself has been expanded to permit self-determination elections where there was no separate finding that the group of employees who were voting to join a unit was, by itself, an appropriate unit, *see, e.g., Maryland Drydock Co.,* 50 N.L.R.B. 363 (1943), and where the Board found that, although the voting unit was not appropriate by itself, the employees were nevertheless entitled to a self-determination election in which a vote for the union would be treated as a vote for inclusion in the existing bargaining unit. *See, e.g., Westinghouse Electric & Mfg. Co.,* 54 N.L.R.B. 272 (1944); *see also Great Lakes Pipe Line Co.,* 92 N.L.R.B. 583, 585–86 & n. 7 (1950) (rejecting contention that election may be held only in group which would constitute separate appropriate unit); *Photype, Inc.,* 145 N.L.R.B. 1268, 1272–74 & n. 8 (1964) (expressly declining to decide whether employees who sought to be added to existing unit would be separate appropriate unit); *Lorillard Division of Loews Theatres,* 219 N.L.R.B. 590 (1975) (employees found not to be a separate appropriate unit, but granted opportunity to join existing unit through a self-determination election); *Kansas City Terminal Elevator Co.,* 269 N.L.R.B. 350, 351–52 (1984) (union represented employees at one of two elevators; Board found that the other elevator was not a separate appropriate unit, but allowed those employees to vote to join the existing unit or remain unrepresented).

## IV. THE BARGAINING UNIT

The Pelham and Manchester elections could have yielded four possible bargaining units. If the guards at both locations had voted against the Union, the historic unit would have remained unchanged. If either group alone had voted for the Union, the unit would have comprised the historic unit plus either Pelham guards or Manchester guards. Finally, as actually occurred, if both groups selected the Union, the bargaining unit would have included the historic unit as well as both Pelham and Manchester guards.

Raytheon claims that the Board did not explicitly find that each of the four bargaining units which might result from the

election would be appropriate, nor did the Board determine that the Pelham and Manchester guards each or together were appropriate units. By conducting the election without those specific findings, argues Raytheon, the Board improperly delegated to the employees its obligation to determine the make-up of the bargaining unit.

This contention is without merit. The Board found that the guards at each facility could appropriately be included in the existing unit of guards. There was never any possibility that the Pelham or the Manchester guards might end up as a separately represented unit; therefore there was no need to find that alone these groups constituted appropriate units.

The Seventh Circuit has reached the same conclusion on similar facts. In *NLRB v. Southern Indiana Gas and Electric Co.,* 853 F.2d 580 (7th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 973 (1989), a union had added two or three unrepresented employees to an existing unit through an *Armour–Globe* election. The court enforced the Board's bargaining order, stating:

> Considering the size of this group and the obvious lack of merit in the company's position, we do not understand why the company has refused to comply with the Board's order that it treat these two or three employees as members of the existing 550–member unit. Bringing this minimal case into this court is a waste of resources.

*Id.* at 580–81. We concur with this sentiment.

The cases cited by Raytheon do not support its position. In *Marshall Field & Co. v. NLRB,* 135 F.2d 391 (7th Cir.1943), the court held that the Board should have designated one or more appropriate bargaining units before, rather than after, conducting an election, and that by waiting until after the election and then defining the bargaining units to coincide with the employees' choice of bargaining representative, the Board had improperly delegated the selection of the bargaining unit to the employees. 135 F.2d at 393. A dissenting opinion

argued that, in reality, the Board had tentatively found certain groups of employees to be appropriate units and then used an election to ascertain the employees' views before making its final determination, and that such a procedure was entirely proper. *Id.* at 394–95 (Minton, J., dissenting).[1]

The facts of *Marshall Field* are distinguishable. There was no historical bargaining unit. The Board had directed self-determination elections in seven separate voting groups after finding that all seven groups might appropriately be included in a single unit, that each group might appropriately be a separate unit, and that the desires of the employees should be the determining factor. The election resulted in one unit comprising three of the voting groups, three voting groups represented as three separate units, and one unit with no representation. The court found that the certification of the three group unit was flawed because the Board had not found that those three voting groups, standing together, would constitute an appropriate unit. By contrast, in the present case, the Board found that a unit including the Pelham and/or Manchester guards, as well as those in the existing unit, would be appropriate.

In *Glass Workers v. NLRB*, 463 F.2d 31 (3d Cir.1972), one union represented three different bargaining units. One unit encompassed eight of the employer's plants, and the other two units each consisted of one additional plant. The Board directed self-determination elections in the two single-plant units to determine if those employees wanted to be included in the multiplant unit.[2] The court found that the Board had the authority to conduct a unit clarification election in these circumstances, but only if it made a finding that each of the potentially resulting units was appropriate. 463 F.2d at 37.

The key distinction between *Glass Workers* and the present case is that in *Glass Workers* there was no question of representation in any bargaining unit, and the employees were only voting on the scope of the unit and not on the choice of a bargaining representative. This created the danger that the election could result in the establishment of an inappropriate unit, a danger which does not exist on the present facts. The Pelham and Manchester employees were not given the choice of bargaining in a separate unit. Accordingly, no finding as to the appropriateness of such a unit was required.

Finally, although Raytheon does not here attack the Board's finding of a community of interests shared by the historic unit and the Pelham and Manchester employees, the record is replete with evidence supporting such a finding. The guard's job descriptions at the various locations are substantially similar. Although pay scales differed somewhat, that is not enough to defeat a finding of appropriateness. *See Nightingale Oil Co.*, 905 F.2d at 535 ("the weight assigned by the agency to each factor it has fairly considered is a matter for it to determine") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). We also note that the Act contains special provisions for bargaining units of guard employees. 29 U.S.C. § 159(b)(3). The unit certified in this case fully complies with the statutory mandate. There is simply no basis for this court to find that the Board abused its discretion in certifying the Union as the bargaining representative for this unit.

---

1. In *NLRB v. Underwood Machinery Co.*, 179 F.2d 118, 121 (1st Cir.1949), this court found the reasoning of Judge (later Justice) Minton's *Marshall Field* dissent "persuasive." The Seventh Circuit itself, in *NLRB v. Weyerhaeuser Co.*, 276 F.2d 865, 872, *cert. denied*, 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960), cited *Underwood* for its approval of Judge Minton's dissent, and, while distinguishing *Marshall Field* on the ground that the Board had made an appropriateness finding before the election in the case before it, also stated that its decision "need not turn on such narrow grounds," but was supported by the Board's broad power to conduct representation elections and its long practice of conducting self-determination elections.

2. The Board's present policy is that employees are permitted to vote on their unit preference only when simultaneously voting on a bargaining representative. *See Southern California Water Co.*, 241 N.L.R.B. 771, 773 & n. 11 (1979).

## V. CONCLUSION

The wishes of employees are a proper factor for Board consideration in determining an appropriate bargaining unit. *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 156, 61 S.Ct. 908, 914, 85 L.Ed. 1251 (1941); *NLRB v. Teamsters Local 404*, 205 F.2d 99, 103 (1st Cir.1953); *Underwood Machinery Co.*, 179 F.2d at 121. The Board has consistently, for over 50 years, construed the Act to permit self-determination elections "in order to assure to employees the fullest freedom in exercising the rights guaranteed by this [Act]." 29 U.S.C. § 159(b). As Justice Jackson once stated, "the mere fact that a path is a beaten one is a persuasive reason for following it." Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Col.L.Rev. 1, 26 (1945). For the above reasons, the Board's petition to enforce its order is *granted.*